## TOWN OF BARNET v. WHITCHER.

*Pauper. Gen. Sts. c. 20, s. 32.*

In case on s. 32, c. 20, Gen. Sts., for bringing paupers from New Hampshire into Barnet, plaintiff town, the referee reported that defendant, acting as commissioner of a county in that state, told N., one of the selectmen of M., a town in that county where the paupers then were without settlement, N. having applied to defendant under the law for county aid, to tell the paupers that they might take $50 and leave and not be chargeable to the county for a year and have $50 more at the end of the year, or be taken to the county poor-farm, as they might choose, and that if they chose to leave, he might pay them, and the county would repay the town; that N. communicated that offer to E., another selectman, who communicated it to the paupers, who chose to accept it and leave; that the paupers, or one of said selectmen, procured the person at whose house the paupers had been staying, to carry them to Barnet, and that he made the first payment to them just before reaching there; that at the end of the year, the selectmen paid them the remaining $50, and informed defendant and his associates thereof, and that the paupers were in Barnet, whereupon they caused the amount to be paid to M. out of the county funds; and that defendant intended to relieve the county of the paupers' support, and to let it fall wherever else it would, but had no definite intent to charge any particular place therewith. *Held*, that the report did not show intent on the part of the defendant to charge plaintiff, nor facts from which intent was a necessary and conclusive inference.

CASE on s. 32, c. 20, Gen. Sts., for bringing paupers from the State of New Hampshire into the town of Barnet. The case was referred, and the referee reported as follows :

It appeared that by the law of New Hampshire, the several towns in that state are bound to support the poor having legal settlement therein, of whom the selectmen have charge, unless other officers are chosen for that purpose ; that the several counties are bound to support the poor therein having no settlement in any town, of whom county commissioners have charge ; and that it is there customary for all the poor first to apply for aid to the selectmen of the towns where they are. The defendant was a county commissioner for the County of Grafton, and Horace Emery and Jabez B. Nelson were selectmen for the town of Monroe in that county, and had charge of the poor therein. John Gauchy and Margaret his wife, natives of Canada, were at the house of Austin Newell, in Monroe, and were very poor, and he was aged and sick, and so helpless that they could not take care of themselves anywhere, and would be likely to be a public charge wherever they might be. They had no legal settlement in New Hampshire nor in Vermont, and no known settlement anywhere. They called upon the selectmen of Monroe for aid, and Nelson, as selectman, called, in the same behalf, upon the defendant and his associates in office, who knew the situation of said paupers. The defendant thereupon, acting as commissioner, told Nelson, as selectman, in substance, to tell Gauchy and wife that they might either take $50 and leave, and not be chargeable to that county for a year, and have $50 more at the end of the year, or be taken to the county poor-farm, as they might choose ; and that if they chose to leave he might pay them, upon which the county would repay the town, but that if they chose not to leave, he should take them to the county poor-farm. Nelson communicated this to Emery, and Emery communicated it to Gauchy and his wife, who chose to leave, and so told him ; and, in pursuance of the arrangement, procured Newell to carry them to Barnet, and Emery, in like pursuance, after they had started and when they had got nearly to Barnet, knowing that they were going there, paid them the $50 to be first paid, out of the funds of the town of Monroe. They went to Barnet and remained there, supporting themselves with that $50 and on credit obtained on the strength of the other $50, till the end of the year, when the second $50 was paid by Nelson out of the funds of Monroe. The defendant and his associates were then informed where Gauchy and wife were, and that these payments had been made, and they caused the money to be

repaid to Monroe out of the funds of the county. Gauchy and wife soon became a charge to Barnet, and after incurring some expense for their support, that town sued Emery to recover it. He thereupon applied to the defendant and his associates to have them assume his defence or the support of Gauchy and wife, but they refused to do either. That suit failed on account of a defect in the writ, and ended without any judgment on its merits. Barnet supported Gauchy and wife a while, when she died, and has supported Gauchy ever since, and necessarily expended in that behalf, prior to the commencement of this suit, $182.25, and in the whole, to this term of court, $1,350.55. The defendant, in doing what he did about Gauchy and wife, as stated, intended to relieve the County of Grafton of their support, except to the extent of the money agreed to be paid, and let it fall wherever else it would, without any more definite intent to charge any particular place with it.

The parties agreed that the arrangement between the selectmen of Monroe, the defendant, and the other county commissioners, was wholly made at Haverhill, in the County of Grafton; that the arrangement between the selectmen of Monroe and Gauchy and wife, in regard to leaving, was wholly made in Monroe; and that the last $50 paid by the selectmen to Gauchy was paid to him in Barnet.

The court, at the December Term, 1876, Caledonia County, Ross, J., presiding, rendered judgment, *pro forma*, on the report for the plaintiff for the full amount expended; to which the defendant excepted.

*A. P. Carpenter*, *L. P. Poland*, and *Harry Blodgett*, for the defendant.

The question is whether the defendant is liable to the plaintiff under s. 32, c. 20, Gen. Sts. There is no liability at common law. It is wholly under the statute, which can have no extraterritorial effect. Story Confl. Laws, ss. 21–57; *Whitford* v. *Railroad*, 23 N. Y. 463–480; *Richardson* v. *N. Y. Central R. R. Co.* 98 Mass. 85; *Rice* v. *Hosiery Co.* 56 N. H. 114. Whatever the defendant may have done in New Hampshire—whatever his interest may have been, unless he himself or his authorized agent committed in this state some act forbidden by the statute, he is not liable. An act, innocent or justifiable by the law of the

place where it is done, is so in all jurisdictions where the question may arise. *Henry* v. *Sargent*, 13 N. H. 321, and cases *supra ; Slack* v. *Gibbs*, 14 Vt. 357.

Had the defendant procured the paupers to be brought to Barnet, it might be admitted that plaintiff's case would be made out on this point. But the defendant had nothing to do with the bringing of the paupers to Barnet. Upon the most unfavorable construction, all the defendant did was, to pay Gauchy $50, and to promise to pay him $50 more in a year upon condition that he would leave the county ; and this he did in his capacity as county commissioner, and within the line of his duty as such, under the laws of New Hampshire, as must be presumed, in the absence of any finding to the contrary. Broom Leg. Max. 968, 969 ; *Company* v. *Gibbons*, 9 Wend. 327. His acts were, as a matter of fact, strictly within the line of his duty. Gen. Sts. of N. H. c. 24. The statute is of a highly penal character, and must be construed strictly. The defendant is not to be subjected either to the punishment *eo nomine* or to the " further " liability imposed by the statute, unless his case comes strictly within its provisions. Dwar. Sts. 634 ; *United States* v. *Sheldon*, 2 Wheat. 119 ; *Daggett* v. *State*, 4 Conn. 60 ; *Leonard* v *Bosworth*, 4 Conn. 421 ; *Pray* v. *Burbank*, 12 N. H. 267 ; *Bartlett* v. *Hoyt*, 29 N. H. 264. Its language is to be understood in its common, ordinary, and popular signification. Dwar. Sts. 573.

Two elements must concur, to constitute the offence—the act of bringing the pauper into the town, and the intent to charge the town with his support. What then are the acts forbidden by the statute without which the offence cannot be committed ? Clearly, the pauper himself is not forbidden to come into the state. He has a legal right to come, of which he cannot be deprived. U. S. Const. Art. 4, s. 2 ; *Foster* v. *Cronkhite*, 35 N. Y. 139–150.

Doubtless the Legislature may make it a criminal offence to hire, procure, aid, or assist a person to do what he has a lawful right to do ; but no such construction will be given to a statute unless it is plainly required. Dwar. Sts. 564 ; HEATH, J., in *Hubbard* v. *Johnstone*, 3 Taunt. 220. The word *bring* cannot be construed to mean *cause to come*. It implies the exercise

of physical force by a voluntary agent in the place from which and to which the subject is brought. It is synonymous with *transport* and *carry*. Crabb's Synonyms ; Webster's Dict. ; Worcester's Dict. Such a construction would deprive the words, " or shall hire or procure to be brought," of all significance. It is a familiar rule that effect is, if possible, to be given to every word. Dwar. Sts. 594 ; Opinion of Justices, 4 N. H. 567.

Under the Mass. statute of 1793, which is identical on this point with this statute, it was held that, to charge the defendant, it must be shown that he *carried* the pauper, or *caused him to be carried*, with intent, &c. *Greenfield* v. *Cushman*, 16 Mass. 394 ; *Sanford* v. *Emery*, 2 Greenl. 5.

No case is to be found in which it has been held under the same or similar language that a hiring or persuading of the pauper comes within the provisions of the statute ; nor in which an attempt has been made to charge a person who did not either carry the pauper or cause him to be carried. *Canton* v. *Bentley*, 11 Mass. 441 ; *Deerfield* v. *Delano*, 1 Pick. 465 ; *Sturbridge* v. *Winslow*, 51 Pick. 83 ; *Palmer* v. *Wakefield*, 102 Mass. 214 ; *Goshen* v. *Hillsborough*, 45 N. H. 139 ; *Merrimack* v. *Sullivan*, 45 N. H. 181 ; *Sullivan* v. *Grafton*, 55 N. H. 339 ; *Thomas* v. *Ross*, 8 Wend. 672 ; *Winfield* v. *Mapes*, 4 Denio, 571.

That the case is within the mischief sought to be remedied by the statute, if it be so, affords no reason for extending its provisions beyond " the correct and ordinary meaning of the expressions of the law." *United States* v. *Sheldon*, 2 Wheat. 121.

Apparently to meet the very objection here made, the words, " or who shall entice any such poor person to remove," were added in the New York statute to language broader than that here in question. *Coe* v. *Smith*, 24 Wend. 343 ; *Foster* v. *Cronkhite*, 35 N. Y. 139.

But the defendant did not hire, nor procure, nor in any way induce, the pauper to come to Barnet. The utmost that can be said is that he induced him to leave the County of Grafton.

The gravamen of the offence lies in the intent to charge the town, which is here wanting. It is not found that defendant intended to charge the town of Barnet, or any other town or place

anywhere, with the pauper's support.  *Wallingford* v. *Gray*, 13 Vt. 228 ; *Deerfield* v. *Delano*, 1 Pick. 465.  The general intent found, " to let the pauper's support fall wherever else it would," is no more than an intent to let it fall wherever it rightfully belonged.

The plaintiff can recover, if anything, only the amount it had expended at the time suit was brought.

*A. M. Dickey* and *Walter P. Smith*, for the plaintiff.

The defendant is liable under our statute for what he did while in New Hampshire.  If a person commit an offence in one sovereignty in violation of the laws of another, and be afterwards found in the latter, he may be punished according to the laws thereof.  Story Confl. Laws, 771 ; *Adams* v. *The People*, 1 Comst. 173.  The plaintiff could have no remedy in the courts of New Hampshire.  *Pickering* v. *Field*, 6 Vt. 102.

The referee sufficiently finds the intent on the part of the defendant to charge the plaintiff with the support of Gauchy and wife.

The referee found that the defendant's intent in making the arrangement detailed in the report was, to relieve the county of the paupers' support, and let it fall wherever else it would.  That was equivalent to finding that defendant intended to charge the town to which they might go with their support; or, in other words, that he intended to charge Barnet with their support, if they went to Barnet in pursuance of the arrangement he made with them.  They went there in pursuance of the arrangement, and were chargeable to Barnet.  That is all the statute requires, to hold the defendant for the damages.  The manner in which the money was to be paid shows the intent of the defendant.  The case is to be distinguished from *Wallingford* v. *Gray*, 13 Vt. 228, and *Cortland County* v. *Herkimer County*, 44 N. Y. 22.

That the defendant acted as county commissioner, does not relieve him from liability, for it was no part of his official duty to hire paupers to leave the county and become chargeable elsewhere.  The case is unlike the case of *Sturbridge* v. *Winslow*, 21 Pick. 83.

This suit is not brought to recover the penalty, but the damages sustained by plaintiff in consequence of the wrongful act of the defendant. The purpose is remedial, not penal. *Palmer* v. *Wakefield*, 102 Mass. 214. The plaintiff is entitled to recover all the damages up to the time of trial. *Stratford* v. *Sanford*, 9 Conn. 281.

The opinion of the court was delivered by

BARRETT, J. This action is brought upon s. 32, c. 20, Gen. Sts. There is no question but Gauchy and wife were poor and indigent, having no visible means of support. There is no doubt that they were carried to the town of Barnet, to get rid of the support of them by Grafton County in New Hampshire. There is no doubt that it was the intent of the person procuring them to be carried to Barnet, to leave Barnet to its chances of having them to support ; and as to him, there would be no difficulty in finding the intent to charge Barnet with their support. The question is, whether the report shows that the defendant, in what he did, had the intent thus to render Barnet chargeable. We think it does not. " The defendant, acting as county commissioner, told the selectman, Nelson, who had applied to him, to tell Gauchy and wife they could have their choice, to take fifty dollars and leave, and not be chargeable to Grafton County for a year, and have fifty dollars more at the end of the year, or be taken to the county poor-farm ; and if they chose to leave, to pay them, and the county would repay the town : and if they chose not to leave, to take them to the poor-farm." This is all that is shown by the report to have been done by defendant prior to the carrying to Barnet. All more that was done in that respect, was done by and between Nelson, a selectman of Monroe, and Emery, another selectman of that town, and Gauchy, and Newell, who was procured by some one of the three first named (the report leaves it doubtful which) to carry Gauchy and wife to Barnet, and pay the first $50. At the end of the year the other $50 was paid by Nelson out of the funds of Monroe. The defendant and his associate county commissioners were then informed where Gauchy and wife were, and that those payments had been made,

and they caused the money to be paid to Monroe out of the funds of the county. It is thus shown by the proper force of the language of the report, that from the first talk of the defendant with the selectman Nelson till the end of the year, the defendant had done and known nothing of what had taken place in respect to Gauchy and wife. What he said to Nelson in the first instance does not indicate that the defendant had Barnet in mind, or any other particular place, or that he had in mind that Gauchy and wife were to, or would be, taken out of New Hampshire, or that he supposed that they would become chargeable to any place in any town or state.

The payment of the $100 to Monroe as agreed, after the year had passed, cannot operate by way of ratification, as showing and fixing the intent required by the statute to exist and co-operate with the act and the means of procuring the bringing of Gauchy and wife from New Hampshire and leaving them in Barnet.

Such payment could, at most, be matter of circumstantial evidence bearing on the question of the existence of the required intent, and to be considered by the trier of the case in connection with other evidence on that question. The intent is a substantive fact to be found by the trier, in order to make out a cause of action under the statute. The payment would not operate to bind the defendant as a ratification and adoption of the acts of the persons who bargained for and made the transportation of the paupers from New Hampshire to Barnet, as might be the case in matters of agency express or implied, not involving penal liability. The *intent* must be made out and found in this case, the same as in a prosecution for the fine provided in the same section of the statute. The liability in this case ensues upon the liability to the punishment by fine. The expression is, " and shall be further liable to any town in this state," following immediately after and connected with the provision as to punishment by fine. So that what is requisite to render the defendant liable to the fine, is requisite in order to render him liable to pay the town as claimed in this suit.

As the report fails to show that the referee found the intent, and as it fails to show facts which make the intent a necessary

and conclusive inference of fact to be drawn by the court, the case is not made out against the defendant.

The *pro-forma* judgment is reversed, and judgment is rendered for the defendant.