## TOWN OF DOVER v. SIMON A. WHEELER.

### *Pauper.   Gen. Sts. c.* 20, *s.* 32.

In case under s. 32, c. 20, Gen. Sts., to recover for money expended by plaintiff for the support of a pauper brought from Massachusetts into plaintiff town with intent to 'charge the town with her support, it was agreed that the pauper was insane, and, as an insane pauper, had been an inmate of the Lunatic Hospital at Northampton, Massachusetts, for a year or more, when the general agent of State Charities, whose duty it was, under the statute law of that state, so to do, made an examination, to ascertain whether the pauper had sufficient ability to pay her expenses at said hospital, or kindred who were by law obliged to maintain her, or a legal settlement in any town or city in that state, and ascertained that she had not such ability, and no such kindred, nor settlement in the state, but that she had a legal settlement in the plaintiff town ; whereupon, by direction of the Board of State Charities, he directed defendant, an employe of the board, to remove her from the hospital to plaintiff town, and commit her to the custody of plaintiff's overseer of the poor, which defendant did, which removal was the act complained of.   *Held,* that as defendant knew the pauper's poverty and plaintiff's liability to support her if in the state, and knew that plaintiff would incur expense if he left her there, and as the pauper was rightfully a citizen of Massachusetts, and in law and in fact a Massachusetts pauper, and as such not chargeable to plaintiff, who was bound to support her only as between itself and other towns in the state until brought back by defendant,—the *intent to charge* plaintiff was made out ; and that there was nothing in other statutes *in pari materia* showing that in the passage of the statute in question the Legislature intended to exempt from its operation those cases where the pauper was taken to the town of his legal settlement, nor anything in inter-state comity justifying such a construction.

CASE on s. 32, c. 20, Gen. Sts., for bringing Susan A. Phelps, a pauper, from Massachusetts into plaintiff town, with intent to charge plaintiff with her support.

An amended declaration in two counts was filed.   The first count was for money by plaintiff laid out and expended for the support of the pauper ; the second, for the fine to which the defendant was alleged to be liable under the statute.   Defendant pleaded the general issue, and gave notice of special matter in defence, from which it appeared that at the time of the commission of the act complained of, the said Susan was an insane pauper, and, as such, had been an inmate of the Lunatic Hospital at Northampton, Massachusetts, for a year or more, but that she had a legal settlement in plaintiff town;   that under chapter 240 of

the Acts of 1863 of that state, it was the duty of the general agent of State Charities to examine and ascertain whether the said Susan had sufficient ability to pay her expenses at said hospital, or kindred who were by law obliged to maintain her, or any legal settlement in any city or town in that state ; that on making such examination, said agent ascertained that she had no means to maintain herself at the hospital, no kindred in the state who were bound to support her, and no legal settlement in the state, but that she had a settlement, as already stated, in the plaintiff town ; and that, on or about August 1, 1876, by direction of the Board of State Charities, he directed the defendant, an employe of said board, to remove her from the hospital to plaintiff town, and commit her to the custody of the plaintiff's overseer of the poor, which he did. For the purpose of obtaining the judgment of the court on the questions of law involved, it was agreed that the statements of the notice should be taken as true, and that, if the judgment of this court should be in favor of plaintiff, the damages and fine should be assessed by the clerk, and final judgment here rendered.

At the September Term, 1878, Windham County, the court, Ross, J., presiding, rendered judgment, *pro forma*, for the defendant ; to which the plaintiff excepted.

*Davenport & Eddy*, for the plaintiff.

The act of the defendant is a plain violation of Gen. Sts. c. 20, s. 32. If the statute is one that the Legislature had constitutional power to enact, it is obligatory, not only on the citizens of this state, but on those of other states when they are in this state. That question is to be settled without regard to the statutes of Massachusetts, as they have no extra-territorial effect. The fact that the pauper had a settlement in Dover, is irrelevant. The right to compel a town to support a pauper is one *stricti juris*, and cannot be enforced except in accordance with some statutory provision. *Middlebury* v. *Hubbardton*, 1 D. Chip. 205 ; *Jamaica* v. *Guilford*, 2 D. Chip. 103 ; *Castleton* v. *Miner*, 8 Vt. 209 ; *Aldrich* v. *Londonderry*, 5 Vt. 441 ; *Houghton* v. *Danville*, 10 Vt.

537 ; *Manchester* v. *Dorset*, 14 Vt. 224 ; *Marshfield* v. *Edwards*, 40 Vt. 245.

The statute is one that the Legislature had the constitutional power to enact. With its expediency the court has nothing to do. The right to enact it is incident to the police power inherent in every state. SHAW, C. J., in *Commonwealth* v. *Alger*, 7 Cush. 53 ; REDFIELD, C. J., in *Thorpe* v. *Rutland & Burlington Railroad Co.*, 27 Vt. 140 ; Cooley Const. Lim. 572 ; *Lincoln* v. *Smith*, 27 Vt. 328 ; Sedgw. Stat. Law, 435, *et seq. ; New York* v. *Miln*, 11 Pet. 102 ; *Cooley* v. *The Wardens*, 12 How. 299 ; *Gibbons* v. *Ogden*, 9 Wheat. 1 ; *Watertown* v. *Mayo*, 109 Mass. 315 ; *Morrill* v. *State*, 38 Wis. 428 ; *State* v. *Cassidy*, 22 Me. 312.   The late cases in the United States Supreme Court, *Henderson* v. *Mayor, &c.*, 2 Otto, 259, and *Chy. Lang* v. *Freeman*, 2 Otto, 275, are not in conflict with the statute nor with the reasons that support it.

It is urged that, to recover, plaintiff must prove an intent on the part of defendant to charge plaintiff with the support of a pauper in regard to whom plaintiff was under no obligation before ; and *Wallingford* v. *Gray*, 13 Vt. 228, *Marshfield* v. *Edwards*, 40 Vt. 245, *Barnet* v. *Ray*, 33 Vt. 205 and *St. Johnsbury* v. *Goodenough*, 44 Vt. 662, are relied on.   But it is not necessary to prove *such* an intent.   Such intent as was necessary the case shows.   1 Bishop Crim. Law, ss. 238, 248, 252 ; *Sullivan* v. *Grafton*, 55 N. H. 347.   It is said that Dover was already charged ; but the fallacy of that is, that it was not charged as between itself and Massachusetts.   But it makes no difference. *Marshfield* v. *Edwards, supra.   Greenfield* v. *Cushman*, 16 Mass. 393, and *Deerfield* v. *Delano*, 1 Pick. 465, are not in point.

It is also urged that, on the ground of comity, the court should, by construction, interpolate into the statute such language as will excuse one who brings a pauper from a foreign state into a town where, by the laws of the state, the pauper has a settlement.   But a comparison of ss. 31 and 32 of the statute shows that our settlement laws are made for our own citizens and municipalities. The history of the legislation on the subject shows the same.

Slade's Sts. 373, s. 11, 382, s. 2 ; Rev. Sts. c. 16, ss. 25, 26 ; Comp. Sts. c. 18, ss. 29, 30, 32.

The action of the State Board of Charities was a wanton interference with the rights of the pauper as well as of the plaintiff. There is no process by which she could be so taken from the state where she had fixed her domicil. Constitution United States, Art. 4, s. 2, and the 14th Amend't ; *Portland* v. *Bangor*, 65 Me. 120.

The claim for the penalty in this action is waived.

*Field & Tyler*, for the defendant.

The defendant is not liable. The case shows no unlawful intent on his part to render the town chargeable. Not every act of bringing a pauper from one town into another and leaving him there, is actionable. PIERPOINT, C. J., in *Barnet* v. *Ray*, 33 Vt. 205 ; *St. Johnsbury* v. *Goodenough*, 44 Vt. 662 ; *Wallingford* v. *Gray*, 13 Vt. 228 ; *Marshfield* v. *Edwards*, 40 Vt 245. Apply the rule deducible from those cases to this, and it appears that this is wanting in the element of intent. The defendant was clearly guilty of no intent to charge the plaintiff. To *charge* means, to put or lay on, to burden, to impose. The plaintiff was already burdened.

The section in question should be construed as though it contained the clause, " if such a person has not a legal settlement in such town." That is the only reasonable construction, and accords with previous legislation on the subject. Slade's Sts. 370, s. 2 ; Rev. Sts. c. 16, s. 25 ; Comp. Sts. c. 18, s. 29. It accords also with No. 40, Sts. 1867, s. 1. But how could it be made an indictable offense to bring a pauper, &c., when it would be lawful for the pauper to come by herself. The test of the statute is, the right of the pauper to come. *Morgan* v. *Mead*, 16 Vt. 644. The authority of the court to construe the statute as we urge cannot be doubted. The intention of the Legislature should be followed. *Henry* v. *Tilson*, 17 Vt. 479 ; REDFIELD, J., in *Treasurer of Vermont* v. *Clark*, 19 Vt. 129 ; *Ryegate* v. *Wardsboro*, 30 Vt. 746 ; SHAW, C. J., in *Cleveland* v. *Norton*, 6 Cush. 383. At common law persons were indictable only for fraudulently remov-

ing paupers into a parish in which they had no settlement. *Rex* v. *Busby*, 3 Botts' Poor Law, 335, and cases cited by GRAY, J., in *Palmer* v. *Wakefield*, 102 Mass. 214. Statutes are never construed as taking away a common-law right unless the intention is manifest. PARSONS, C. J., in 4 Mass. 471. See the laws of New Hampshire, New York, and Massachusetts, which prohibit the bringing of paupers only into towns where they are not lawfully settled.

But the case does not show that the defendant was informed of the facts in the case. Such knowledge will not be presumed. Without such knowledge, how could there have been intent? But the intent is the *gravamen* of the offence. *Earl* v. *Camp*, 16 Wend. 562; *Salvacool* v. *Boughton*, 5 Wend. 170; *Sturbridge* v. *Winslow*, 21 Pick. 83.

*Edmund H. Bennett*, also for the defendant.

The action is purely statutory, no such remedy existing at common law. *Crouse* v. *Mabbett*, 11 Johns. 167. The case then depends on the construction of Gen. Sts. c. 20, s. 32.

Although the action is a civil one, the construction must be the same as if it were an indictment on the same section. *Wallingford* v. *Gray*, 13 Vt. 228; *Greenfield* v. *Cushman*, 16 Mass. 392; *Deerfield* v. *Delano*, 1 Pick. 464; *Sanford* v. *Emery*, 2 Greenl. 5; *Dyer* v. *Hunt*, 5 N. H. 401. In *Thomas* v. *Ross*, 8 Wend. 672, it was held that it must be shown that the party bringing the pauper acted *mala fide* and with fraudulent intent. See also *Foster* v. *Cronkhite*, 35 N. Y. 139, and NELSON, C. J., in *Coe* v. *Smith*, 24 Wend. 344. The pauper had a legal right to return to Dover. Can it be that to aid her therein, in good faith, would be to do a thing calling for punishment civilly and criminally? Can there be an accessory without a principle?

The language of the statute leads to a contrary conclusion. The act must be done with intent to charge, &c. *To charge* means, to impose a burden. The language of the earlier statute was, "with intent *to make* such town chargeable." Does not that mean to create what did not exist? But Dover was already charged. " Every town shall relieve and support all poor and indigent per-

sons settled therein *whenever* they shall stand in need thereof." Gen. Sts. c. 12, s. 1.

The analogies of the law lead to the construction asked for. It is familiar that in construing penal statutes clauses must often be inserted by construction. *Commonwealth* v. *Slack*, 19 Pick. 304; *Commonwealth* v. *Boynton*, 12 Cush. 499. Were this an indictment, it would be a complete defence that the defendant did not know that the pauper had no settlement in Dover, even if she had not; *a fortiori* if she had such settlement. *Reg.* v. *Willmot*, 3 Cox C. C. 281; *Reg.* v. *Cohen*, 8 Cox C. C. 41; *Reg.* v. *Sleep*, Leigh & C. 44; *Commonwealth* v. *Boynton, supra ; Hearne* v. *Gaston*, 2 Ellis & E. 16; *Taylor* v. *Newman*, 4 B. & S. 89. But in penal actions the criminal intent and knowledge are as necessary as in an indictment. *Brooks* v. *Clayes*, 10 Vt. 37. As to interpolation, see *Hassenfrats* v. *Kelly*, 13 Johns. 466; *Benton* v. *Hunt*, 7 Wend. 53; *Etheredge* v. *Cromwell*, 8 Wend. 629; *Price* v. *Thornton*, 10 Mo. 135; *Duncan* v. *The State*, 7 Humph. 148; *Commonwealth* v. *Stout*, 7 B. Monr. 247; *Deerfield* v. *Delano, supra ; Charleston* v. *Lunenburgh*, 23 Vt. 525; *Henry* v. *Tilson*, 17 Vt. 479 ; *State* v. *Benton*, 18 N. H. 47 ; *Ryegate* v. *Wardsboro*, 30 Vt. 746 ; *Somerville* v. *Boston*, 120 Mass. 574.

The fundamental policy of the pauper law calls for the same construction. The policy of Vermont and of all the New England States is, that each town shall maintain its own poor. That is " the corner stone of the whole pauper law." *Ryegate* v. *Wardsboro, supra.* Each town in the state has a legal right to remove from its borders any pauper found therein, to the town in this state of legal settlement. The same policy gives each town the right to remove the pauper to the *state* where he lawfully belongs. This right is distinctly recognized in every other New England State, and by New York and Pennsylvania. Maine Rev. Sts. of 1871, c. 24, s. 38 ; New Hampshire Comp. Sts. of 1853, s. 5 ; Massachusetts Gen. Sts. c. 79, s. 20 ; Connecticut Gen. Sts. of 1866, 620, s. 12 ; Rhode Island Gen. Sts. of 1872, c. 66, s. 1 ; New York Rev. Sts. cited 8 Wend. 674 ; 2 Brightly's Purdon's Dig. 1156, s. 17. That Vermont has no different policy is shown by the course of her legislation. See Slade's Sts. 373,

s. 11, 382, s. 2; Rev. Sts. c. 16, ss. 25–27; Sts. of 1845, No. 39; Comp. Sts. c. 18, ss. 29–32; Gen. Sts. c. 20, s. 32.

But if a private person would be liable to the penalty, an officer of the law, acting under official orders from a legal board with apparent jurisdiction over the subject-matter, is not. The necessary criminal intent cannot exist. *Sturbridge* v. *Winslow*, 21 Pick. 83.

The opinion of the court was delivered by

POWERS, J. The act of bringing the pauper, Susan A. Phelps, to Dover in the manner and under the circumstances detailed in the exceptions, was a violation of the provisions of s. 32, c. 20, Gen. Sts. This section provides a penalty for bringing a poor and indigent person from another state to a town in this state, with intent to charge such town with such person's support. Section 31 of the same chapter provides a penalty for bringing a poor person from one town in this state to another town, without an order of removal, with intent to charge such other town with such person's support. Other sections of the chapter impose the duty upon towns to support all paupers lawfully settled therein, and provide a remedy and procedure for the removal of a pauper standing in need of relief from the town called upon to aid to the town of legal settlement. The several modes by which a legal settlement may be acquired in towns are precisely defined in the statute; and if the person in need of relief has no legal settlement in any town, the town of domicile must bear the expense of support. Citizens of one state may rightfully remove to other states, and establish homes and gain rights of domicile and settlement therein. Our Bill of Rights, Art. 19, reads, " that all people have a natural and inherent right to emigrate from one state to another that will receive them." In the exercise of this "natural and inherent right," Susan A. Phelps left Vermont several years since, and eventually became domiciled in Massachusetts, and while there, became a pauper. While in Massachusetts she was not a pauper chargeable to Dover. While in Vermont, and as against all other towns in Vermont, Dover was bound to support her. While out of Vermont, every other town in Vermont

was as much bound to support her as Dover. She might voluntarily return to Vermont in the exercise of the same " natural and inherent right "; and on her arrival here, the relative duty of Dover, as respects all other towns, to take care of her, is revived. But, in this case, she was brought here *nolens volens ;* and, by the defendant's act of bringing her and leaving her with the overseer of the poor of Dover, the duty to support her was cast upon that town, which would not have devolved upon it had the defendant left her alone. The defendant knew of her poverty and dependence—knew the town liable to support her when resident in Vermont—and knew that Dover would necessarily incur expense if he landed her there. His intent to charge that town with her support is sufficiently made out.

It is no answer to say that she was already " chargeable " to Dover. As a citizen of Massachusetts, she could not be chargeable to Dover. She had acquired a new domicil. She had expatriated herself from Vermont, and had become a citizen of Massachusetts, subject to its laws, and, as a pauper there, had become a rightful partaker of its bounty. She was, in law and in fact, a Massachusetts pauper, and not a Vermont pauper. If she had been a pauper of Dover receiving aid, who had escaped to Massachusetts, or had been clandestinely transported to Massachusetts, to shift or avoid the burden of her support, and had thereupon been returned to Dover by the authorities of Massachusetts, the case would present different features. *State* v. *Benton,* 18 N. H. 47. But the case is the ordinary one of emigrants from one state falling in need of aid in the home of their adoption. If the argument of the defendant is sound, it follows that all the thousands of emigrants from Vermont, who left towns wherein they had legal settlements, and have acquired homes in the Western States, may be returned to us by the authorities of those States when they come to want.

The notice states that this pauper had no legal settlement in Massachusetts ; but this does not preclude the idea that she was a pauper entitled to support there. We have two classes of paupers ; one, entitled to support from the town in which they have acquired in some of the statutory modes a legal settlement ; the

other, entitled to support by reason of transient domicil. Doubtless similar provisions of law exist in Massachusetts. At all events, according to the notice, " she was an insane pauper, and, *as such*, had been an inmate of the Lunatic Hospital at Northampton for a year or more." In the light of these facts, ought the court, by judicial construction, to override the plain language of section 32 ? Did the Legislature intend to impose the penalty prescribed, in cases where poor persons were returned from other states to the towns in which they had legal settlements ? If the section, looked at by itself, or all the acts *in pari materia*, looked at as one system, show the legislative intent to be different from the expression of it in the section, it is the province and duty of the court to disregard the letter and give force to the spirit of the law. Under section 31 it is unlawful to transport a poor person from one town to another for the purpose of imposing the burden of support upon such other town. Nevertheless, such poor person can voluntarily go to such town with such intent. The obligation of towns to support paupers is one of strict right, and can only be imposed in the manner pointed out in the statute. An order of removal can only issue when it is found upon judicial inquiry that the needy person has come to reside in the town initiating the proceedings, has become chargeable as a pauper, and has a legal settlement elsewhere in the state. When the order is made, the defendant town has the right of appeal, and may contest any or all the material facts necessary to the adjudication. In this way the rights of both towns are amply protected. If a private individual undertakes a removal, the town charged has no opportunity to be heard, and great wrong and hardship would ensue. So long as the pauper resides elsewhere, the town of his legal settlement owes him no duty, and is exposed to no liability. He has the free right to remove from town to town, to acquire a new settlement if he can, to return when he pleases, and if ultimately he falls in need of support, the town of his legal settlement is charged, provided it be legally so adjudged. If an individual should return a pauper to a poor-house from which it had wandered into another town, it could not be said that he did so with intent to charge the town with such pauper's support. The town

has already been charged, and was actively sustaining the burden. The town had been charged in the sense that the burden of support had been imposed and assumed in the way pointed out in the statute. The town cannot be " charged " except in the manner pointed out in the statute. ·The fact that the individual transporting the pauper happens to leave him in the town of his legal settlement, does not excuse him. The fact that another section of the statute imposes upon towns the duty to support all paupers lawfully settled therein, avails such individual nothing. The fact of settlement and the duty of support are material only when the town is called upon in a legal manner to incur expense. The *intent* to charge the town with the pauper's support—to compel the town to incur expense—to call into active operation an ulterior liability—to create a burden where none before existed,—is the test of criminality involved in section 31. The same *intent*, executed in like manner, works the same mischief under section 32.

The pauper had a legal settlement in Dover as against other towns in this state. As against the state of Massachusetts, she had no settlement in Dover. Between different states and between towns in different states there can be no such thing as a place of legal settlement, within the contemplation of the pauper laws. In respect to the poor-laws of Vermont, Massachusetts is as much a foreign state as Canada. Under section 31, the individual wrongfully bringing a pauper into a town is liable for his support, if he has no settlement there. He rightfully incurs the same liability under section 32, as no question of legal settlement can, in any case, properly arise. Obligations to support the poor, and regulations governing the subject, are essentially matters of state concern, which each state must assume and fashion in its own way ; and any attempted inter-state legislation looking to an adjustment of such obligations between sister states, would doubtless prove to be neither practicable nor desirable. It is not to be presumed that the Legislature of Massachusetts expected or intended that the Act under which the defendant justifies the removal of Mrs. Phelps would have any extra-territorial effect, as it clearly could not.

22

The language of section 32 is plain and unambiguous ; the mischief sought to be remedied, apparent ; the remedy prescribed, homogeneous with that in section 31 ; and nothing appears to indicate that the Legislature meant one thing and said another.

No principle of judicial comity will justify the court in giving effect to the statute of Massachusetts, if it was designed to effect the removal of this pauper to Dover. It would be a pleasure to recognize and effectuate the legislative will of a sister state, under circumstances possible and proper for the exercise of that comity, which courts may sometimes extend to other jurisdictions. But we do not understand that we are at liberty to suspend the operation of a positive statute forbidding an act that the law of another state sanctions.

The judgment is reversed, and judgment rendered for the plaintiff on the first count in the amended declaration. Damages to be assessed by the clerk, pursuant to the stipulation of counsel.