TOWN OF SOUTH BURLINGTON *v.* TOWN OF CAMBRIDGE.

October Term, 1904.

Present: ROWELL, C. J., TYLER, START, WATSON, and HASELTON, JJ.

Opinion filed February 20, 1905.

*Towns—Paupers—Liability for Support—Infant—Emancipation—Residence.*

In an action by one town against another for the expenses incurred in the support of a pauper, it appeared that the pauper had not resided for three years in the defendant town after attaining his majority; that he never resided in any town for three years supporting himself, unless he so resided in the defendant town as an emancipated minor. He was born in the defendant town October 17, 1871. His father died in May, 1887, and the family kept together and resided in defendant town till September 1888, when his mother married, and thereafter lived with her second husband in defendant town till 1894. After said marriage the pauper supported himself and lived with his grandfather in defendant town till September, 1895. During this time he visited his mother's house occasionally, but she did not claim to exercise any control over his person or earnings, and he did not look to her for protection or advice, and he remained unmarried till September, 1895. In 1902, when he was about 31 years of age, he came to want in the plaintiff town and was assisted by the plaintiff. *Held,* that these facts failed to show emancipation of the pauper during his minority, and that, therefore, the defendant was not liable for his support by the plaintiff.

ASSUMPSIT for expenses incurred in the support of a pauper. Heard on agreed statement at the March Term, 1904, Chittenden County, *Munson,* J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case.

*T. C. Cheney* for the defendant.

The pauper was not emancipated during his minority. *Bradford* v. *Lunenburg,* 5 Vt. 481; *Wells* v. *Westhaven,* 5 Vt. 322; *Tunbridge* v. *Eden,* 39 Vt. 17; *Sumner* v. *Sebac,* 8 Me. 223; *Searsmont* v. *Thorndike,* 77 Me. 504; *Lowell* v. *Newport,* 66 Me. 78; *Rex* v. *Uckfield,* 5 M. & S. 214.

*Theo. E. Hopkins,* and *Brown & Taft* for the plaintiff.

The agreed statement shows that the pauper was emancipated. Emancipation may be inferred from facts and circumstances. Schouler on Domestic Relations, 368; 39 Me. 406; *Campbell* v. *Cooper,* 34 N. H. 49; 15 N. H. 489; *Lyon* v. *Bolling,* 14 Ala. 753; *Tillotson* v. *McCrillis,* 11 Vt. 477; *Benner* v. *Edgington,* 76 Iowa 105; *West Gardner* v. *Manchester,* 72 Me. 509; *Oldtown* v. *Falmouth,* 40 Me. 106; *Dennysville* v. *Trescott,* 30 Me. 470; *Lowell* v. *Newport,* 66 Me. 78; *Monroe* v. *Jackson,* 55 Me. 59; 31 Me. 124; 48 Me. 565; *St. George* v. *Deer Isle,* 3 Greenl. 390 (Me.); *Wells* v. *Kennebunk,* 8 Greenl. 200 (Me.); *McCarty* v. *Boston & Lowell R. R. Co.,* 2 L. R. A. 608 (Mass.); *Springfield* v. *Wilbraham,* 4 Mass. 493; *Nightingale* v. *Withington,* 15 Mass. 274; *Ream* v. *Watkins,* 27 Mo. 519; *Campbell* v. *Campbell,* 11 N. J. Eq. 272; *Everett* v. *Sherfey,* 1 Iowa 356; *Aulger* v. *Badgeley,* 29 Ill. App. 336; *Johnson* v. *Terry,* 34 Conn. 259; *Farrell* v. *Farrell,* 3 Hous. (Del.) 633; *Fairhurst* v. *Lewis,* 23 Ark. 435; *Chilson* v. *Philipps,* 1 Vt. 41; *Dierker* v. *Hess,* 54 Mo. 246.

HASELTON, J. This was an action in which the plaintiff sought to recover for expenses incurred in the support of a pauper, one James Perry. In county court the case was tried by the court on an agreed statement of facts, and judgment was rendered in favor of the plaintiff for $49.53, the amount of the expenses it had incurred in the support of the said

James after the notice which will hereinafter be referred to was given and received. Aside from the notice, the facts material to the question of liability are these:

James was born in Cambridge, October 17, 1871. His father died in May, 1887, and the family was kept together and resided in Cambridge until September, 1888, through the efforts of the mother, James and a younger brother. On the last named date, when, as will be seen, James was about 17 years of age, the mother married one Corrigan with whom she lived in Cambridge until 1894. After said marriage "James supported himself by working at odd jobs in the town of Cambridge," and lived with his grandfather until September, 1895. He, however, occasionally visited the Corrigans, but, to use here the exact language of the agreed statement, "his mother did not claim to exercise and did not exercise any authority or control over his person or earnings, and he did not look to her for protection or advice." It should be further stated that down to September, 1895, he was unmarried, and that he never resided in any town three full years supporting himself, unless he so resided in Cambridge.

Time went on, and in 1902, when James was about 31 years of age, he came to want in the town of South Burlington and was assisted by that town.

The first question is, did James reside three full years in the town of Cambridge, supporting himself. Living as he did apart from his surviving and re-married parent, the presumption is that he was emancipated on reaching the age of 21, if not before. No question is made that James resided in Cambridge from the time that he became twenty-one until September, 1895. But by reference to the dates given it will be seen that this period lacked a month or so of three full years. The question then is was James emancipated while a minor.

The pauper law has undergone a variety of modifications, but the true definition of "emancipation" has not been materially affected.

Upon and after the death of his father, James might have chosen a guardian, but the agreed statement does not show that he did. He was apparently content that the filial and parental relation should remain unsevered. He lived with his grandfather in the same town with his mother and was self-supporting, but under the circumstances, the fact that she did not claim his wages, and the fact that she did not assert a right to custody and control, do not, taken together, show or warrant the presumption of emancipation. There was, so far as all intendments are concerned, ever during his minority the gloved hand which indeed she did not lay upon him, but in respect to the exercise of which no right was relinquished, though no claim was in fact exercised. So far as the agreed statement of facts is concerned, the parental eye may well have been upon him throughout his minority, and the parental hand may have been ever ready to interpose in his behalf. Concede that the minor "shifted for himself," it does not appear that he was cast off and "left to shift for himself," or that there was any renunciation or abdication of parental duties.

It does not appear that any new relation, operating in itself as emancipation, was contracted by the minor. The case is the not uncommon one of stepchildren, whose course is what that of James was here, and towards whom the surviving parent conducts himself or herself with the restraint which was here exercised. But in view of the welfare of children and the good of society, and above all for the maintenance of the law as it has been from time to time declared, it must be held that the agreed statement of facts does not show emancipation during minority.

Emancipation before the age of majority leaves the emancipated person in an anomalous position under our law. He cannot make a valid will. He can avoid his contracts unless made for necessities. If he would sue, it must be by his next friend. If he is sued, he must have a guardian *ad litem* appointed to defend, at least, unless he is under a general guardianship.

Our conclusion is arrived at from a variety of legal considerations, from a review of such of our own cases as undertake to define "emancipation," and with due regard to cases reported from other states.

The remaining question relates to the sufficiency of the notice which, properly directed to the overseer of the poor of Cambridge and signed by the overseer of the poor of South Burlington, was this: "Mr. James Perry and family transient residents of this town is sick and without visible means of support. He has applied to me for assistance and I have relieved his necessities. I am informed that he has a residence in your town and shall expect your town to pay back to this town all money that we expend for them. This notice is given under the provisions of Chapter 144 of Vermont Statutes and the amendments thereto."

This notice is certainly crude. There seems to be some confusion between the tramp law and the pauper law. But, since the holding on the question of emancipation is determinative of the case, the sufficiency of the notice is not passed upon.

*Judgment is reversed, and judgment is rendered for the defendant to recover its costs.*