TOWN OF MORRISTOWN *v.* TOWN OF HARDWICK.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed March 3, 1908.

*Towns—Burial of Paupers—Liability of one Town to Another Town Therefor—Statutes—Construction by Implication— Restriction—P. S. 3667.*

In determining whether one town is bound to reimburse another town for expenses incurred in caring for a pauper, no inferences can be drawn from general principles, from analogy, or from the equities of the case; for there are no equities between towns in respect of caring for and supporting paupers, nor any common law liability, but the whole matter is purely and strictly statutory, and where the statute imposes no liability there is none.

Care must be taken in construing statutes by implication, lest a wild olive be grafted in, and a statute cannot be thus extended beyond what is necessary to accomplish its purpose.

Since the relief and support of paupers is the only purpose of P. S. 3667, providing that, "If a person is poor and in need of assistance for himself or family, the overseer of the poor of any town shall, when application for such assistance is made, relieve such poor person or his family," and that such town may recover the expense so incurred from the town where the pauper last resided for the space of three years, supporting himself and family, and since the statute does not expressly make one town liable to another town for burying the former's paupers, nor is that necessary to accomplish the purpose of the statute, it cannot be construed impliedly to impose that liability; hence, it does not exist.

ASSUMPSIT, under P. S. 3667, to recover for expenditures for the burial of a pauper. Heard on an agreed statement of facts at the December Term, 1906, Lamoille County, *Miles,* J., presiding. Judgment, *pro forma,* for the plaintiff. The defendant excepted. The opinion states the case.

*W. A. Dutton* for the defendant.

The liability of a town for the support of paupers is wholly statutory, and such statutes are to be strictly construed. *Ives* v. *Wallingford,* 8 Vt. 224; *Houghton* v. *Danville,* 10 Vt. 537; *Baldwin* v. *Rupert,* 8 Vt. 256; *Churchill* v. *Fairlee,* 17 Vt. 447; *Castleton* v. *Miner et al.,* 8 Vt. 209; *Middleton* v. *Hubbardton,* 1 D. Chip. 205; *Aldrich* v. *Londonderry,* 5 Vt. 441; *Chelsea* v. *Washington,* 48 Vt. 610; *Macoon* v. *Berlin,* 49 Vt. 13.

At common law the duty of burying the dead fell upon the person at whose house the death occurred, unless there were near relatives, in which case it became the duty of the relatives; and that seems to be the law in this State. *Shaw, Admr.* v. *Hallihan et ux.* 46 Vt. 389; *Walton* v. *Hall's Est.* 66 Vt. 455.

P. S. 3667 is the only statute making one town liable to another for the support of its paupers; and that statute contemplates the support of a "person" only, or his family. A dead body is not a "person." *Tute et al.* v. *James et al.,* 46 Vt. 60; *Caldwell* v. *Wallace,* 4 Stew. & P. (Ala.) 285.

*F. G. Fleetwood* for the plaintiff.

The expense incurred in burying a pauper is clearly within the spirit and intent of P. S. 3667, though not within its letter. *Town of St. Johnsbury* v. *Town of Waterford,* 15 Vt. 692; *Topsham* v. *Hartwell,* 1 Mass. 517; *Ellsworth* v. *Inhabitants of Houlton,* 48 Me. 417; *Clark Co.* v. *Huie,* 49 Ark. 145; *Ranson etc. Dist.* v. *Jenkins etc. Dist.* (Quart Sess.) 8 Kulp. 223.

Rowell, C. J.   A woman residing in the plaintiff town became poor and in need of relief, and the plaintiff relieved and supported her till she died, and buried her at reasonable expense, without notifying the defendant, in which she had a legal residence. But before she died, the plaintiff notified the defendant sufficiently to charge it for said expense if, in law, the plaintiff is otherwise entitled to recover therefor.

The statute provides that every town shall relieve and support poor and indigent persons residing or found therein when in need of relief, as the statute requires. The statute further provides that if a person is poor and in need of relief for himself or his family, the overseer of the poor of any town shall, when application therefor is made, relieve such person or his

family, and if he has not gained a residence in such town, and is not of sufficient ability to provide such assistance, the town so furnishing the same may recover the expense thereof from the town in which he has a residence.

Overseers of the poor have the care of poor and indigent persons as long as they remain at the charge of their towns, and are required to see that they are suitably relieved, supported, and employed, at the charge of their towns, either in the poorhouse provided by the town, or in such other manner as the town directs, or otherwise at the discretion of the overseers; and overseers must take effectual means to prevent such persons from straying into other towns.

It is well to note that in considering this question we cannot reason by analogy, nor draw inferences from general principles, for there are no equities between towns in respect of caring for and supporting paupers, and no common-law liability, but the whole matter is purely and strictly statutory, and where the statute imposes no liability there is none, and that is the end of it.  This has always been the law of this State, and the law of England as well.  It follows, therefore, that if the defendant is liable in this action, it is because the statute makes it so; and if the statute makes it so, it is by implication, and not by express provision, for there is none; and if by implication, it must be found in the general provisions for the relief and support of paupers.  But care must be taken in construing statutes by implication, lest a wild olive be grafted in, and a statute cannot be thus extended beyond what is necessary to accomplish its purpose.  Now the purpose of this statute is, the relief and support of paupers; and it cannot be said to be necessary in order to accomplish that purpose, that one town should be liable to another town for burying its paupers.

It must be held, therefore, that our statute imposes no liability in cases of this kind, and consequently, that none exists. In all of the other New England States, and in some, at least, of the other states, there are express statutes imposing such liability, and all the cases referred to by the plaintiff are from states having such statutes.

The 43 Eliz. c. 2, passed in 1601, was the first poor law act that England ever had.  Prior to that time the relief of the poor was provided for by voluntary contribution, the col-

lection of which had gradually become organized by legislation. That statute is the basis of the English poor law as at present administered, and quite likely was largely the basis of the poor laws of the Colonies and subsequently of the States into which they were formed. The similarity between that statute and ours, passed in 1787, makes it quite probable that ours was modeled after that as far as it was thought applicable to our local situation and circumstances. Hence, in construing our statute, it is worth while to have in mind the construction put upon that statute in *The Queen* v. *Stewart*, 12 Ad. & El. 773. That was an application on behalf of a hospital for a mandamus to the overseers of the poor of the parish, to remove from the hospital the dead body of a pauper who had died there and was settled in the parish, and cause it to be buried. In the argument of the rule to show cause, the necessity of the case, a very large construction of the words of the statute of Elizabeth, and an inference from 48 Geo. 3, c. 75, for the burial of shipwrecked bodies cast on shore, were alone relied upon. The court said that in the 48 Geo. there were undoubtedly words from which it might be inferred that the framers of it recognized burials at the expense of the parish, and that in a doubtful case such recognition might weigh something in affirmance of a legal obligation on the parish to provide such burials; but that in that case the court was necessarily thrown upon the statute of Elizabeth, concerning which it said, that the overseers were statutable officers, dealing with a statutable fund, and accountable for its application to statutable purposes; that the language of the statute left no doubt; that the relief and the employment of the chargeable poor were its objects; that the fund was created for those objects, and could not be diverted from them, unless to objects specifically engrafted thereon by subsequent statutes, of which there was not one; that no usage, however proper in itself, or however uninterrupted, could prevail against that which the plain construction of a statute forbids; and that the court could not accede to the argument that the burial of a pauper receiving relief, but *not dying in any parish house,* could be brought within the objects of the statute, expressed or implied. The court purposely limited the rule as it did, for in passing on the ground of necessity it wished to be understood as distinctly recognizing

its existence, while denying its application in the way there contended for. The court said that every one dying in that country, and not within certain exclusions of the ecclesiastical law, has a right to Christian burial, which implies the right to be carried from the place where his body lies to the parish cemetery; that the common law undoubtedly casts upon some one the duty of carrying to the grave, decently covered, the body of any one dying in such a state of indigence as to leave no funds for that purpose; that the feelings and the interests of the living require that, and cast the duty, but that the question was, on whom it fell; that it was enough to say in that case that it was not cast upon the overseers when the death did not take place in a parish house, or in that which, in the circumstances, can be considered as such. In view of the extensive consequences of its decision, the court thought it right to say, that it seemed that the individual under whose roof a poor person dies is bound—if no one else is, we think it means—to carry the body decently covered to the place of burial; for he cannot keep it unburied, nor do anything that will prevent Christian burial, and· therefore cannot cast it out so as to expose it to violation, or to offend the feelings or endanger the health of the living, and for that reason, cannot carry it uncovered to the grave; that, therefore, it would probably be found, when a pauper dies in any parish house, poorhouse, or union house, that that circumstance casts upon the parish or the union, as the case might be, the duty of burying the body, not by virtue of the statute of Elizabeth, but on the principles of the common law.

*Pro forma judgment reversed, and judgment for the defendant to recover its costs.*