Town of Randolph *v.* Elmer M. Montgomery et al.

May Term, 1937.

Present: Powers, C. J., Slack, Moulton, Sherburne and Buttles, JJ.

Opinion filed October 5, 1937.

*Stanley L. Chamberlain* and *Raymond Trainor* for the plaintiff.

*Wilson, Carver, Davis & Keyser* for the defendant.

SLACK, J.  P. L. 3950 provides:

> "A person who brings a poor and indigent person from any town in the state to another town in the state, or aids therein, with intent to charge such town with his support, shall forfeit to such town a sum not exceeding five hundred dollars; and, if such town is not liable for the support of such poor

and indigent person, the person making such removal, or aiding therein, also shall be liable, from time to time, to pay such town such damages as accrue for the support of such poor person, which, as well as the penalty, may be recovered in an action of tort, on this statute, in the name of the town.''

P. L. 3951 provides:

''The selectmen of a town, if the town is not liable for the support of such poor and indigent person, without forfeiture or penalty, within one year after a poor and indigent person comes to the town, provided such person has there become a town charge, may return such person to the town from which he last came.''

This action is to recover the penalty and damages specified in P. L. 3950 for the removal of Bessie Bacon, her seven minor children and James McNaughton from Braintree to Randolph. The declaration contains two counts relating to each person, one for the penalty and the other for the damages. The defendants, Montgomery, Flint and Howard, were the selectmen of Braintree at the time of, and caused, such removal, and defendant Rice was acting as Montgomery's agent and servant. Plea, the general issue, and in substance and effect that none of the persons so moved had a legal pauper residence in any town in the state, but were transient persons residing in Randolph, and were poor and indigent and being supported, in whole or in part, by Randolph; that such had been their situation as to residence and support for four years prior to November 11, 1935, when one Tilson, Randolph's overseer of the poor, moved, and aided in moving, them from Randolph to Braintree with intent to charge the latter with their support; that Randolph continued to aid in their support until April 1, 1936, when it declined to do so longer, at about which time they applied to Braintree for relief, and became chargeable for support; that Braintree was not, and is not, liable therefor; that on April 20, 1936, the defendants, acting in their aforesaid capacities, returned such persons to Randolph, pursuant to the provisions of P..L. 3951, and that the

overseer of Randolph neglected to take effectual measures as required by P. L. 3920 to prevent such persons from strolling into Braintree.

During the presentation of its case, the plaintiff discontinued the same as to defendant Rice, and discontinued the two counts in the declaration relating to McNaughton.

On motion of defendants, a verdict was directed for them, at the close of plaintiff's evidence, on the remaining counts except those relating to Mrs. Bacon, to which plaintiff excepted.

At the close of all the evidence plaintiff moved for a verdict against each defendant as to liability and that the question of the amount thereof, alone, be submitted to the jury, on the ground that the evidence did not tend to show that the persons in question were moved from Randolph to Braintree with intent to charge the latter town with their support and therefore defendants were not absolved from their acts by the provisions of P. L. 3951. At the same time defendants moved for a directed verdict on the count declaring for damages for the support of Mrs. Bacon on the ground that damages were not recoverable under P. L. 3950 unless it appeared that Randolph was not liable for her support, and that this did not appear, and on the ground that if Randolph was liable for her support it could recover the same only after the notice required by statute had been given, and that notice had not been shown; and moved for a directed verdict on both counts on the ground that the uncontradicted evidence showed that they only did what, in the circumstances, they had a right to do under the provisions of P. L. 3951, and also showed that Mrs. Bacon's pauper residence from November 11, 1935, to April 20, 1936, in contemplation of law, was in Randolph. The plaintiff's motion was denied and the defendants' was granted, to both of which rulings plaintiff excepted.

■■ The first question is whether the court erred in directing a verdict for defendants on the counts relating to the children. In the circumstances, this question must be answered in the negative. Mrs. Bacon, their mother, had become, and was, the responsible head of the family, and expense incurred in providing for the children was the same in the eye of the law, as if incurred in providing for her personal needs. *Rockingham* v. *Springfield*, 59 Vt. 521, 9 Atl. 241. The members of a legally constituted family take their *status* from him, or her, who is

responsible for their support, and aid furnished them is, in con·
templation of the law, furnished the party liable therefor (*Rowell
v. Vershire*, 62 Vt. 405, 19 Atl. 990, 8 L. R. A. 708), and his, or
her, residence determines the residence of those for whose sup-
port he, or she, is liable. *Mount Holly* v. *Peru*, 72 Vt. 68, 47
Atl. 103. The latter case is cited with approval in *Essex* v.
*Jericho*, 76 Vt. 104, 56 Atl. 493, and *Cabot* v. *St. Johnsbury*, 94
Vt. 311, 315, 111 Atl. 454. See, also, *Newbury* v. *Brunswick*,
2 Vt. 151, 158, 19 A. D. 703, decided in 1829. In keeping with
this line of cases are those that hold that minors and unemanci-
pated children cannot acquire a pauper residence in their own
right. *Marshfield* v. *Tunbridge*, 62 Vt. 455, 20 Atl. 106; *Dan-
ville* v. *Hartford*, 73 Vt. 300, 50 Atl. 1082; *South Burlington* v.
*Cambridge*, 77 Vt. 289, 59 Atl. 1013. While none of the cases
cited present the precise question under consideration they are
authority for holding, as we do, that Mrs. Bacon, alone, was the
"poor and indigent person" contemplated by the statute in ques-
tion, especially since her children were living with her in Ran-
dolph at the time she was moved to Braintree, and were moved
with her. This exception is without merit.

We are now called upon, for the first time, to construe the
provisions of P. L. 3950 and 3951, which have been on our statute
books since 1919. For some years prior to that time the former
section was the only law we had relating to this particular
subject. Then, what appears in the latter section and in P. L.
3952 was added thereto. See Act 107, Laws of 1919. That act
embraced in a single section the provisions of the former statute
and those added by the amendment. The statute remained thus
until the revision of 1933, when it was re-enacted in its present
form.

It is not apparent that the intent of the Legislature expressed
in the act of 1919 was affected by this change, which is the only
one here material. The plaintiff claims that the authority given
to selectmen under P. L. 3951 to act in certain instances without
incurring the liabilities imposed by P. L. 3950 is confined to
cases where poor and indigent persons are brought to their town
in violation of the latter statute; while defendants claim, to
quote from their brief, "that the expression 'such person' used
in section 3951 refers to the poor and indigent person described
in said section as one for whose support the town is not liable

and one who has come to the town within one year of the time of removal and one who has there become a town charge,'' and that the selectmen may return any such person to the town from which he last came irrespective of whether he was brought to their town in violation of P. L. 3950 or came there voluntarily.

The underlying rule of statutory construction is to discover the intent of the Legislature in doing what it has done, or attempted. *Sorrell* v. *White*, 103 Vt. 277, 153 Atl. 359; *Clifford* v. *West Hartford Creamery Co., Inc.*, 103 Vt. 229, 252, 153 Atl. 205, 215, and cases cited. In the latter case, it is said that ''in determining the meaning of a particular word used in the statute, the intention of the Legislature is to be ascertained, not from the literal sense of the word used, but from a consideration of the whole and every part of the statute, the subject matter, its manifest object, the history of its enactment, the trend of previous legislation upon the same subject matter, and the evils to be corrected.'' These tests applied to the question before us, resolve it in plaintiff's favor. There can be no doubt but that the only persons referred to in P. L. 3950, other than those who are charged with its violation, are those moved from one town to another with intent to charge the latter with their support. It is equally apparent that they are the persons referred to in the early part of the following section as ''such poor and indigent persons,'' since no others have yet been mentioned to whom it could refer. This is the only construction of which the language thus far used is susceptible. See, too, P. L. 1 and 31 for meaning to be given the word ''such'' in construing statutes. To give this word where it next appears in section 3951 the meaning contended for by defendants would be inconsistent with the manifest intent of the Legislature, not only as expressed in the act itself, taken as a whole, but as shown by the trend of previous legislation on this subject matter. Generally speaking, aside from the statute under consideration, the support of a poor and indigent person falls on the town where he has a pauper residence, or, if he has none in the State, on the town furnishing such support. Under this statute, if defendants' construction is adopted, it may fall on neither, but on the town ''from which he last came'' to the one where he ''becomes a town charge,'' although he may never have been in the former except to pass through it *en route* to the latter. To illustrate: A person who

lives in Waterbury, and has a pauper residence there, goes, voluntarily to Middlesex by the usual route, which crosses a corner of Moretown. Soon after he arrives in Middlesex he is injured, or is taken ill, and immediately becomes a "town charge." The selectmen of Middlesex return him at once to Moretown, that being "the town from which he last came" to Middlesex, although Moretown is under no duty to support him under any other law of the State. It is inconceivable that the Legislature intended to charge Moretown with his support, in the circumstances stated. Furthermore, the language of section 3952 repels defendants' contention. It is, in effect, that a person who *again* brings such poor and indigent person into the town from which he has been so *returned* with intent, etc., shall forfeit, etc. The word again, which according to Webster's New Int. Dict. means "another time" or "once more," clearly indicates that the person the Legislature had in mind was one who had been previously *brought* to the town that returned him in violation of P. L. 3950, and not one who came there *voluntarily*, as argued by defendants.

██ ██ It follows that the defendants were not justified in what they did unless Mrs. Bacon was moved from Randolph to Braintree with intent to charge the latter with her support. Such intent is the determining factor in the case. *Wallingford* v. *Gray*, 13 Vt. 228. To the same effect are *Taylor's Admr.* v. *Pawlet*, 102 Vt. 180, 147 Atl. 284; *Dover* v. *Wheeler*, 51 Vt. 160 (see page 169); and *Barnet* v. *Whitcher*, 50 Vt. 170. It must have existed at the time of her removal, because if born later it would be outside of and beyond the act mentioned in the statute. *Wlock* v. *Fort Dummer Mills*, 98 Vt. 449, 454, 129 Atl. 311; *Morristown* v. *Hardwick*, 81 Vt. 31, 69 Atl. 152. But, if it then existed, it matters not whether it was to charge Braintree with her support immediately or eventually. The intent might as well be to do the latter as the former. The arrangement under which Mrs. Bacon went to Braintree, or Randolph's attitude toward her support while she was there, is of no consequence, therefore, on the issue raised by the first count, except as bearing on the question of intent at the time of her removal to Braintree. If she was moved from Randolph to Braintree in violation of 3950 the defendants were justified in returning her to the former town, and are not liable under the second count, since the uncon-

tradicted evidence shows that Braintree was not liable for her support when she was taken there.

■ On the evidence, the question of intent that induced Mrs. Bacon's removal to Braintree was for the jury, the burden of proof being with defendants.

■ The provisions of P. L. 3920 relating to the duty of the overseers to prevent their paupers from strolling into other towns do not effect any phase of the case. *Chelsea* v. *Washington*, 48 Vt. 615.

This disposes of all questions presented for review.

*Judgment reversed and cause remanded.*