(Nos. 21907, 21945.—

HENRY J. SCHIRESON, Appellant, *vs.* MICHAEL F. WALSH, Director of the Department of Registration and Education, Appellee.—HENRY J. SCHIRESON, Plaintiff in Error, *vs.* MICHAEL F. WALSH, Director of the Department of Registration and Education, Defendant in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 8, 1933.*

SIMS, STRANSKY & BREWER, (FRANKLIN J. STRANSKY, of counsel,) for appellant and plaintiff in error.

OTTO KERNER, Attorney General, (WILLIAM C. CLAUSEN, and TRUMAN A. SNELL, of counsel,) for appellee and defendant in error.

Mr. Justice Herrick delivered the opinion of the court:

This cause comes here on a purported appeal taken by the terms of section 60k of the Civil Administrative Code. (Smith's Stat. 1933, chap. 127, p. 2769; Cahill's Stat. 1933, chap. 24a, p. 672.) The cause is also brought here upon a writ of *certiorari* sued out of this court on a showing of probable cause, pursuant to sub-section (c) of section 17 of the Medical Practice act. (Smith's Stat. 1933, chap. 91, p. 1840; Cahill's Stat. 1933, chap. 91, p. 1806.) The two causes have been consolidated in this court. Each proceeding seeks to review the judgment of the superior court of Cook county quashing a writ of *certiorari* sued out of that court to review a final order of the Department of Registration and Education (hereinafter called the department) entered March 13, 1930, revoking the license of the appellant and plaintiff in error (hereinafter called the defendant) to practice medicine in all its branches in the State of Illinois.

The record is quite voluminous, consisting of about 2000 pages of evidence and a large number of original exhibits which have been certified to this court. Neither side has seen fit to abstract any of the evidence or the exhibits, and the case is submitted upon the complaint filed against the defendant, the return of the director of the department to the writ of *certiorari,* which return includes all of the pleadings in the case as well as the findings of the committee of physicians which heard the case and the order of revocation entered by the department. We have not undertaken to read the evidence nor to examine the exhibits but have confined ourselves to the legal questions presented.

The complaint filed contained three counts. The first count charged that the defendant at the time he obtained his license to practice medicine and surgery in this State was not a man of good moral character. The second count charged that the defendant was guilty of the employment

of fraud, deception and unlawful means in applying for and securing his license to practice medicine in this State. The third count charged the defendant with being guilty of gross malpractice, resulting in permanent injury of a patient.

The case in its nature is necessarily important to the State and to the defendant. The power to revoke the license of any professional man is not arbitrary or despotic, to be exercised by any board, commission or department according to its pleasure or whim. A license to practice medicine in this State, strictly speaking, is not a property right, yet it is a privilege or right which is of great property value to the holder thereof. To qualify in the first instance for the obtaining of such license has cost any applicant years of arduous study and work and the outlay of a considerable sum of money. A license having been obtained according to the provisions of the statute, the holder of a license can only be deprived of it in accordance with the law of the land—not at the mere discretion of some department or board. The license being a valuable right, the owner, before he can be deprived of such right, is entitled to a full and complete hearing held in accordance with the statute. Where the hearing to revoke a license of any professional man is not before a court judicially convened it may be more or less informal. The niceties and refinements of the procedure or the forms of questions to and the answers of witnesses are not so strictly applied as on a hearing before a judicial body, but the substance of the law must be at all times regarded as well as the competency and materiality of the evidence. The correct rules of law applicable to the issues must be observed and followed at the hearing before the commission or body hearing the cause. No higher legal tests are permitted to be adopted by the body trying the case than the law of the State recognizes as the correct tests to be applied to the issues being tried. The burden of proof never shifts to the license

holder but the burden remains throughout the hearing upon the department or body making the charge. The necessity for the strict enforcement of these salutary rules is particularly required where the charges often originate with the board, department or commission sitting as the tribunal upon the trial of the charges. The guilt of any defendant of the charges made in the complaint against him must be established clearly and conclusively by competent evidence before the license of any defendant may be legally revoked. The body hearing the case should be a qualified body without prejudice and strictly impartial as to the issues to be tried. Not to apply these rules of law to hearings of this character would be to deprive a defendant of the due process of law guaranteed to him by our State and Federal constitutions. The proceeding must be an orderly one, conducted in accordance with established rules which do not violate the fundamental rights of the defendant. It is a well recognized fact that to deprive a professional man of his license to practice his chosen profession is generally the death of his professional life.

It is vigorously urged by the defendant that jurisdiction of this cause was not conferred upon the department because the complaint filed was verified upon the information and belief of the assistant Attorney General making the affidavit. On behalf of the department it is claimed that the defendant waived this defect, because on the petition for rehearing this error was not urged as one of the grounds for the setting aside of the order of suspension. Section 60$i$ of the Civil Administrative Code is cited in support of that position. The department also cites in support of its position the case of *Bodenweiser* v. *Department of Registration*, 347 Ill. 115, which case cites section 60$i$, and holds, in substance, that all grounds urged for the vacating of the departmental order must be set forth in the written notice for rehearing provided for under section 60$i$. The constitutionality of the amendment of 1927

to the Civil Administrative Code was not raised in the *Bodenweiser case.* However, regardless of the provisions of section 60*i*, we are of the opinion that the defendant, not having raised the question of the sufficiency of the verification either before the committee hearing the charges or before the department and having voluntarily submitted himself without objection to a hearing of the cause as far as this ground is urged, waived the objection, and the sufficiency of the affidavit cannot be raised here.

Section 6 of the bill of rights provides, in substance, among other things, that no search warrant shall issue without probable cause, supported by affidavit. This court has held that notwithstanding this provision of the bill of rights a defendant may waive this provision by not raising the question of the sufficiency of the affidavit in the lower court before the trial of the case. *People* v. *Leinecke,* 290 Ill. 560; *People* v. *Reed,* 287 id. 606; *People* v. *Powers,* 283 id. 438; *People* v. *Green,* 281 id. 52.

This proceeding was conducted throughout under the amendment of 1927 to the Civil Administrative Code, being sections 60 to 60*l,* inclusive. It is earnestly urged by the defendant that section 60*c,* added to the Civil Administrative Code by the amendment of 1927, (Smith's Stat. 1933, chap. 127, p. 2768; Cahill's Stat. 1933, chap. 24*a,* p. 671;) is unconstitutional, being in violation of article 3 of the State constitution. Section 60*c* and the other sections hereinbefore referred to, added to the Civil Administrative Code by the act of 1927, do not attempt to define any of the causes for which the license of a physician may be revoked or suspended. Section 60*c,* amongst other things, provides that certificates may be revoked or suspended in the manner provided by said act but not otherwise; that the department may upon its own motion, and shall upon verified complaint in writing of any person, provided such complaint, or such complaint together with evidence, documentary or otherwise, presented in connection therewith,

shall make a *prima facie* case, investigate the action of any person holding or claiming to hold a certificate from the department. Section 60c further provides that before suspending or revoking any certificate the department shall issue a citation notifying the registrant of the time and place when and where the hearing on the charges made against him shall be had. The act of 1927 does not, nor does the Civil Administrative Code in any of its sections, define what shall be the causes for revocation or suspension of a license issued by the department to a physician.

The legislative act apparently has attempted to place in the department the power to determine for itself what constitutes sufficient cause for the revocation of the license of a physician to practice medicine and surgery. It also vests the department with the power to make an *ex parte* investigation upon complaint made to it and to determine whether or not the showing made constitutes a *prima facie* case against the registrant. A great many of the different States of the Union, if not all of them, have in some form adopted legislation governing the professional conduct of physicians and surgeons and have distinctly enumerated the grounds for the revocation or suspension of the license issued to a physician. Apparently no two States which adopted legislation on this subject agree as to the causes of suspension. Some States specify causes which are not included in the legislation adopted upon the same subject by other States. An example of the variance in legislation on this subject is shown by the action of our own legislature. The Medical Practice act of 1899, (Hurd's Stat. 1915-16, p. 1703,) providing that the State Board of Health may revoke a license to practice medicine and surgery, defined certain grounds therefor, amongst which is one leveled against a physician who is guilty of advertising under a name other than his own, "or for any unprofessional or dishonorable conduct." By the provisions of section 60c the department is vested with the judicial power to deter-

mine what constitutes a *prima facie* case authorizing the revocation or suspension of a license issued to any licensee by the department, and also to further determine what causes justify the revocation or suspension of a license issued to any registrant. If it be contended that it was the intention of the legislature that the department should be governed by the provisions of section 17 of the Medical Practice act (Smith's Stat. 1933, p. 1840; Cahill's Stat. 1933, p. 1805;) then the amendment of 1927 constitutes an incomplete act, which will be hereinafter referred to.

However, waiving for the time the question whether or not the amendment of 1927 is an incomplete act, there still remains the question of the attempt to confer upon the department the power to decide as to what constitutes, in the first instance, a *prima facie* case authorizing the revocation or suspension of a license issued to a physician. The legislature did not by its act undertake to define the meaning of the term *"prima facie* case," as used in the Civil Administrative Code. It is the law of this State that the legislature may enact legislation creating certain rules of evidence and what facts constitute a *prima facie* case. However, any legislative act which undertakes to decide what constitutes a *prima face* case must lay down some guide or test stating the facts necessary to constitute a *prima facie* case. Where the legislature has undertaken to determine that certain facts constitute a *prima facie* case, it is one of the judicial functions of the court to decide whether or not the facts which make such *prima facie* case have been proved. No such limitation upon the department is contained in the Civil Administrative Code. The department is unrestricted in that respect. It has the arbitrary power to determine what facts constitute a *prima facie* case authorizing the revocation or suspension of the license of a registrant. No review of the department's decision on that subject is afforded the registrant. If the department has decided, upon the complaint made

and on an *ex parte* investigation, and acting upon its own unlimited ideas as to what constitutes cause for revocation or suspension of a physician's license, that the evidence submitted constitutes a *prima facie* case, then the physician is put to the necessity, publicity, notoriety and expense of defending himself against the charges made.

Our State government, by the constitution, is divided into three separate and distinct departments: the legislative, executive and judicial. It is the function of the legislative department to decide what the law shall be, but it has no right to delegate to any department, officer or commission the power to legislate or to invade the province of the judicial department and vest in officers not constituting any part of the judicial system, the power, at their discretion, without any rules or standards for the exercise of such discretion, to determine what the law shall be. That portion of section 60c which attempts to confer upon the department the authority to determine what constitutes a *prima facie* case against a registrant, without laying down any code of ethics, rules or regulations, violation of which shall be legal cause for the revocation or suspension of the license of a physician, is an unwarranted delegation of legislative authority. The Department of Registration and Education is not a court. It has no judicial powers. It is merely an agency of the legislative department of the State. The attempted unconstitutional delegation to it of the power to determine, in the first instance, what constitutes a *prima facie* case against a physician, without any legislative enactment setting forth facts constituting a cause for the revocation or suspension of the license of a licensee under that department, gives it no jurisdiction or authority to determine what complaint, together with evidence, documentary or otherwise, constitutes a *prima facie* case. *People* v. *Yonker,* 351 Ill. 139; *Welton* v. *Hamilton,* 344 id. 82; *City of Chicago* v. *Matthies,* 320 id. 352; *People* v. *Vickroy,* 266 id. 384; *People* v. *Sholem,* 294 id. 204;

*Kenyon* v. *Moore,* 287 id. 233; *Sheldon* v. *Hoyne,* 261 id. 222; *Noel* v. *People,* 187 id. 587.

It is urged by the defendant that the act of July 7, 1927, entitled, "An act to amend 'An act in relation to the civil administration of the State government and to repeal certain acts therein name,' approved March 7, 1917, by amending section 60 of said act and by adding sections 60*a,* 60*b,* 60*c,* 60*d,* 60*e,* 60*f,* 60*g,* 60*h,* 60*i,* 60*j,* 60*k* and 60*l* to said act," is unconstitutional.

Section 13 of article 4 of our constitution provides, amongst other things, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." It is quite apparent that the practice and procedure in this case and the findings made were conducted under the provisions of section 60 as amended and sections 60*a* to section 60*l,* inclusive, as added to the Civil Administrative Code by the amendment of 1927. (Smith's Stat. 1933, chap. 127, pp. 2766-2769; Cahill's Stat. 1933, chap 24*a,* pp. 669-672.) As before stated in this opinion, the amendment of 1927 does not undertake to define the causes for which the license of a physician or surgeon may be revoked or suspended. On behalf of the department it is contended that these causes are set forth in section 16 of the Medical Practice act. A comparison of sections 17 and 18 discloses that that act provides a complete code of procedure for the institution, hearing and determination of charges made against a physician under which it is sought to revoke or suspend his license to practice medicine. The Medical Practice act, as before stated, also expressly enumerates the causes for revocation and suspension of licenses, while section 17 provides that no license or certificate shall be suspended or revoked upon any of the grounds enumerated in section 16 without a hearing and providing for a hearing of the charges.

The Medical Practice act is a complete act. The act of 1927 purporting to amend the Civil Administrative

Code does not in anywise attempt to amend or repeal any of the provisions of the Medical Practice Act. In fact, the latter act is not even referred to in the aforesaid amendment to the Civil Administrative Code, while sections 60c to 60l, inclusive, deal with identically the same subject matters as sections 17 and 18 of the Medical Practice act.

The same subject matters are covered by the act of 1927 as are covered by the Medical Practice act. If it were intended by the act of 1927 to vest in the department the right to determine for itself what causes should constitute grounds for the revocation or suspension of the license of a physician to practice his profession, then the act is void as attempting to confer legislative powers upon the Department of Registration and Education. If it is contended that no such powers were sought to be conferred upon the department then an equally serious question is presented as to the validity of the act of 1927. If the department is not to determine for itself by the act of 1927 what constitutes cause for the revocation or suspension of the license of the registrant but that matter is governed by the provisions of sections 17 and 18 of the Medical Practice act, then in that situation the act of 1927 is not complete in itself. If the correct construction of the act of 1927 is claimed to be that it repealed the procedure for the proceedings involving the revocation or suspension of the license of a physician as prescribed by sections 17 and 18 of the Medical Practice act then the situation is not improved. If the effect of the act of 1927 is to amend the Medical Practice act no such suggestions or intimations are made in the title of the act of 1927. If it is intended that sections 17 and 18 of the Medical Practice act shall be repealed by the act of 1927 no reference is made to that fact in the act of 1927. There is nothing in the title of the act of 1927 to advise anyone in the slightest particular that it affected, either by amendment or repeal, any part of the Medical Practice act.

Sections 17 and 18 are not set out at length in the act of 1927. It cannot be correctly said that they are repealed by implication, because without them the act of 1927 is incomplete in itself, and with them still in force the provisions of the act of 1927 must be read in conjunction with sections 17 and 18 in order to have a workable procedure for the trial of causes as well as the grounds of revocation and suspension of a physician's license to practice. The act of 1927, therefore, made substantial changes in the existing act by adding new provisions and mingling the old with the new on the same subject matter. Before one can know what the law is pertaining to the causes for revocation of the license of a physician and the procedure governing such proceedings he must read both the act of 1927 and the Medical Practice act. To do this from a legal standpoint, the act of 1927 must be deemed an amendment to the Medical Practice act even though the act of 1927 on its face is denominated an independent act.

In *Nelson* v. *Hoffman,* 314 Ill. 616, in which case a similar question as to the violation of section 13 of article 4 arose by virtue of a purported amendment, this court said: "The character of an act, whether amendatory or complete in itself, is to be determined not by its title alone nor by the question whether it professes to be an amendment of existing laws, but by comparison of its provisions with prior laws left in force, and if it is complete on the subject with which it deals it will not be subject to the constitutional objection, but if it attempts to amend the old law by intermingling new and different provisions with the old ones or by adding new provisions, the law on that subject must be regarded as amendatory of the old law and the law amended must be inserted at length in the new act."

In *Galpin* v. *City of Chicago,* 269 Ill. 27, this court said upon this same subject: "On the other hand, even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes

in an existing act by adding new provisions and mingling the new with the old on the same subject, so as to make of the old and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former and as within the constitutional prohibition."

The Medical Practice act is complete within itself. It prescribes the exact procedure for the revoking or suspending of the license of a physician, the causes for such revocation or suspension, the manner in which the order of the Department of Registration and Education may be reviewed by the circuit or superior court, and the method to be followed in the event it is desired to have reviewed the judgment of the superior or circuit court by this court. Section 60c of the act of 1927 attempts to cover substantially the same ground as section 17 of the Medical Practice act but varies therefrom in many material particulars. Sections 60d, 60e, 60f, 60g and 60h of the act of 1927 are almost identical in phraseology, in some respects, with sections 17 and 18 of the Medical Practice act, while on the other hand there is an essential difference between them in other important provisions. As applied to physicians the act of 1927 is unconstitutional, being in violation of section 13 of article 4 of the constitution. *Broder* v. *Krenn,* 334 Ill. 256; *Nelson* v. *Hoffman, supra; Galpin* v. *City of Chicago, supra; People* v. *Stevenson,* 272 Ill. 325; *Badenoch* v. *City of Chicago,* 222 id. 71; *Brooks* v. *Hatch,* 261 id. 179; *O'Connell* v. *McClenathan,* 248 id. 350.

Count 1 of the complaint is sustained by the report of the committee. This finding cannot stand for two reasons, viz.: First, the Medical Practice act definitely states the causes for which a physician or surgeon may be deprived of his license. That he is not a man of good moral character is not one of the grounds stated in the act for which a license of a physician may be either revoked or suspended. The second reason is, the report of the committee in mak-

ing its findings upon the first and second counts of the complaint is based upon the definition of good moral character, defined in such report as follows: "The term 'good moral character' as used in this connection is assumed to pertain to the entire sphere of human conduct as coming under the description of right and wrong, the obligation of duty and ethics." This definition of the committee is a proposition of law upon which the committee based its findings as to whether or not the defendant was or is a man of good moral character. There is no human frailty or weakness which is not covered by the definition of "good moral character" adopted by the committee as the basic principle of law under which the defendant was tried under counts 1 and 2 of the complaint made against him. We are of the opinion that this standard of good moral character as applied to a proceeding of this nature is entirely too broad and sweeping to be made the basis of a conviction founded upon the charge of a lack of good moral character and requires a much higher test than is usually applied to the ordinarily accepted meaning of the term. The report of the medical committee adopts this same definition of good moral character as applied to count 2. That count is based on sub-section 8 of section 16 of the Medical Practice act as a ground for the revocation and suspension of the license of a physician. It is apparent that the legislative intent, as expressed in the Medical Practice act, contemplated that some positive, willful or intentional act be committed on the part of the registrant which actively induced the issuance of his license. It must have been some overt act in the way of willfully making false answers to material questions affecting his qualifications for the practice of his profession, or of unlawfully concealing from the department the fact, if it was a fact, that he had theretofore been guilty of a violation of some of the causes laid down in the statute for the revocation or suspension of the license of a physician, or some willful

misconduct on his part in the taking of an examination, such as having someone else write his examination for him, or willfully cheating in the examination prescribed by the department. The proposition of law adopted by the committee in its report as the basis of what constitutes good moral character as applied to the case at bar, and the alleged fact that the applicant, the defendant herein, at the time he applied for a license was not a man of good moral character, and that therefore he is guilty of fraud and deception. as that term is used in the Medical Practice act in obtaining a license, are unique, but we are of the opinion that this cannot rightfully be classified as a fraud or deception practiced on the department in obtaining his license, as provided by sub-section 8.

We now pass to the third and last count of the complaint filed against the defendant. By that count it is charged, in substance, that the defendant was guilty of gross malpractice, resulting in permanent injury of a patient. This is one of the grounds prescribed by the statute for revoking or suspending the license of a physician by sub-section 3 of section 16 of the Medical Practice act. If correct rules of law were applied by the committee and the department in the consideration and determination of this charge, the defendant, if found guilty, would be subject either to the revocation or suspension of his license, as might ultimately be decided by the department. The question as to whether conferring upon the department the right to decide what constitutes gross malpractice is constitutional is not raised, and we are not, therefore, deciding whether said sub-section is constitutional. Mere malpractice is not a ground, under the statute of this State, for the revocation of the license of a physician or surgeon. Before his license may be legally revoked or suspended the malpractice on his part must be such as to attain the degree of gross malpractice.

The report of the medical committee upon count 3 of the complaint recites as follows: "Counsel for defendant claims that ordinary skill and ability is all that is required of the defendant. It is true that that is all that the law requires of the average physician, but when the physician proclaims himself one of the greatest and most skillful plastic surgeons in the world (see exhibits) the law demands a much higher degree of skill and ability than is expected of the average physician." It is therefore clear that the report of the committee, which was adopted by the Department of Registration and Education, finding the defendant guilty on count 3, is based on the legal proposition that in the case of the defendant the law demanded of him, by reason of some statement or advertising on his part, a much higher degree of skill and ability than is expected of the average physician. The material question, then, as to the finding on count 3 is whether or not this rule of law as set forth in the findings of the medical committee is a correct rule to be applied in the proper consideration and decision of this case. If it is a correct rule, then we would have varying degrees of skill required when a charge of malpractice is made against a physician either in a civil suit for damages or in a proceeding brought to revoke or suspend his license. Under this proposition of law as above stated, specialists in treating a patient professionally might do or omit to do some act the doing or omission of which would constitute malpractice or gross malpractice on his part which would not even be deemed negligence on the part of the average, ordinary physician or surgeon in the same community. Under the rule adopted by the commission and the department the degree of professional skill required on the part of a physician where his professional acts were questioned might be made to depend upon the extravagance or boastfulness of his statements as to his skill and ability as a physician or surgeon. We do not believe it can be seriously contended that

such is the law of this State. The law of this State is that a physician and surgeon is required to possess, and in his practice to use, reasonable skill—not, perhaps, the highest degree of skill that one learned in the profession may acquire, but reasonable skill such as physicians in good practice ordinarily use and would bring to a similar case in that locality. (*Quinn* v. *Donovan,* 85 Ill. 194; *Utley* v. *Burns,* 70 id. 162.) We believe that the rule adopted by the courts of this State as to what is required of a physician in the practice of his profession is a safe rule both for the public and the profession, and we are not disposed to depart from that rule or to enlarge the professional requirements of a physician or surgeon in the practice of his profession. It therefore follows that the rule adopted by the committee and approved by the department on the trial of the defendant on count 3 of the complaint is erroneous. The same rules apply to proceedings before administrative bodies as apply to courts of record, and where it is clearly apparent that an order of an administrative body is based upon an incorrect rule of law or upon a mistake of law, such order must for that reason be set aside regardless of the evidence introduced. *Interstate Commerce Com.* v. *Union Pacific Railroad Co.* 222 U. S. 541, 56 L. ed. 308; *State* v. *Great Northern Railroad Co.* 130 Minn. 57; *People* v. *McCall,* 219 N. Y. 84; *Atchison, Topeka and Sante Fe Railway Co.* v. *United States,* 51 Fed. (2d series) 510.

The order of the Department of Registration and Education revoking the license of the defendant is erroneous.

The judgment of the superior court is therefore reversed and the cause remanded, with directions to quash the return of the Director of the Department of Registration and Education to the writ of *certiorari* issued out of the superior court and to enter judgment for the defendant.

*Reversed and remanded, with directions.*