VILLAGE OF WATERBURY *v.* EMERY A. MELENDY ET AL.

February Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 3, 1938.

442

444

*Lawrence C. Jones*, Attorney General, for the defendants.

*Fred E. Gleason* (*David F. Hoxie* of counsel) for the plaintiff, the Village of Waterbury.

*Peter Giuliani*, City Attorney (*George L. Hunt* of counsel) for the intervening plaintiff, the City of Montpelier.

*H. C. Shurtleff* for the intervening plaintiff, the Town of Worcester.

BUTTLES, J. The General Assembly of 1933 at a special session which convened July 19, 1933, enacted legislation which is now known as chapter 207 of the Public Laws. Such legislation provided for the creation of a board of public works which should consist of the members of the state highway board *ex officio*. Such board of public works was authorized, with the written approval of the governor, "to cooperate and contract in the name and on behalf of the state with the Federal government in the construction and maintenance of any public works project prepared by the Federal Emergency Administrator of Public Works or other Federal agency now or hereafter created; to accept grants, loans and assistance from the Federal government for the construction, repair, improvement or carrying out of such projects as such board with the written approval of the governor shall designate; to acquire by gift, purchase, lease or by the exercise of the power of eminent domain any real or personal property, including property held for a public use, in connection with the construction or carrying out of any such project; to manage, control and maintain any such public works."

It is further provided that under the conditions therein specified such board of public works may petition the public service commission for the taking by the State under the power of eminent domain, of property in the State, or some easement or other limited right therein, and after notice and hearing and the making of the required findings such commission shall authorize the taking of such property and shall assess the compensation to be paid therefor. Appeal to the Supreme Court on the matter of compensation is provided for.

Section 4980 of said chapter reads thus: ''Whenever any public works for flood control constructed under the provisions of this title are completed, the board of public works shall petition the public service commission to apportion the expense incurred by the state including the damages to any person whose land is taken and the special damages which the owner of land adjoining shall sustain by reason of such construction, between the state and the municipalities in accordance with the benefits received. The public service commission shall thereupon set a time and place for hearing and shall give twelve days' notice thereof to the state and the municipalities benefited.'' The following section provides that the commission shall transmit to each town treasurer a notice of the amount assessed against each town; that such treasurer shall transmit such notice to the selectmen of the town who shall draw an order on the treasurer for the amount of such assessment; that such treasurer shall pay the same to the state treasurer, and if the funds in the hands of the treasurer belonging to the town are not sufficient for the purpose, the selectmen shall borrow the necessary amount. Appeal to the Supreme Court from the decision of the commission on the apportionment of expense is provided for.

Having completed, pursuant to said chapter, three several public works projects known respectively as the ''Montpelier Channel Cleaning including Clothes Pin Dam,'' the ''East Barre Flood Control Project,'' and the ''Wrightsville Flood Control Project,'' said board of public works by its petition to said commission dated September 11, 1936, and various amendments thereto prayed said commission to apportion the expense of said projects between the State and some twenty-four municipalities alleged to be benefited by one or more of these projects, and to set a time and place for hearing in accordance with P. L. 4980.

Thereupon, and prior to the date set for hearing on this petition, the plaintiff brought an action in chancery therein alleging that said chapter 207 of the Public Laws and especially section 4980 are in violation of sections 2, 5 and 6 of chapter II and article 9 of chapter I of the Constitution of Vermont and of the due process of law provision and the equal protection of the laws provision of the Fourteenth Amendment of the Constitution of the United States, and praying that a permanent injunction issue restraining the defendants from enforcing or attempting to enforce the provisions of chapter 207 and in particular the provisions of section 4980 thereof. Thereafter twelve municipalities by leave of the court, as shown by the record, intervened as parties plaintiff. To this bill of complaint the defendants demurred and upon hearing by the chancellor the defendants' demurrer was overruled and a permanent injunction was granted restraining the defendants from proceeding with the hearing for apportionment and assessment of the expenses of any public works project referred to in the bill of complaint, and also from enforcing or attempting to enforce the provisions of section 4980 of the Public Laws.

The case comes to this Court on appeal from this decree.

It is apparent that section 4980 gives a very wide scope for the exercise of the judgment and discretion of the public service commission. Many questions suggest themselves, among others the following: How is the commission to determine, in advance of hearing, what municipalities are benefited, to whom notice of hearing is required to be given? What is the basis of apportionment as between the State and the municipalities? How are the benefits to the municipalities to be determined? Shall it be only on the basis of probable flood protection to riparian property owners, thus requiring assessment of the whole town for the direct benefit of riparian owners only? Is riparian land alone to be considered or land liable to flowage on a basis of frontage, area or value, or shall consideration also be given to the personal property of great value which is subject to flood risk in some of the towns and cities? Or is the term ''benefits'' to be restricted to benefits which the municipality itself, apart from its citizens, may receive, such as protection to its highways and parks and public buildings and any lands to which it may have title? Or is the term to be given a wider application and

held to include not only protection to property but also to life of the inhabitants and intangible benefits like a greater sense of security on the part of inhabitants and sojourners, possibly tending to attract more business to the town?

The statute itself gives no answers to these questions. Does the determination of the answers by the commission involve the delegation to it of such legislative authority as is prohibited by sections 2, 5 and 6 of chapter II and article 9 of chapter I of the Vermont Constitution?

■ Every presumption is to be made in favor of the constitutionality of an act of the Legislature, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *Village of St. Johnsbury* v. *Aron,* 103 Vt. 22, 27, 151 Atl. 650; *Clark et al.* v. *City of Burlington,* 101 Vt. 391, 397, 143 Atl. 677; *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 343, 348, 129 Atl. 159, 39 A. L. R. 1222; *State* v. *Clement Nat. Bank,* 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22; *In re Hackett,* 53 Vt. 354, 357.

■ It is one of the fundamental principles of the American constitutional system that the governmental powers are divided among the three departments of government, the legislative, executive and judicial, and that each of these is separated from the others. This proposition is clearly stated in our State Constitution. This does not mean, however, an absolute and entire separation of functions which would be impracticable if not impossible. The governor is endowed by our Constitution with the veto power and has, to a limited extent, a part in legislation; the house of representatives may order and the senate may try impeachments, therein acting as a judicial body; each house of the General Assembly may judge of the qualifications of its own members. *Sabre et al.* v. *Rutland R. R. Co. et al.,* 86 Vt. 347, 365, 85 Atl. 693, Ann. Cas. 1915C, 1269; *Burnett* v. *Green,* 97 Fla. 1007, 122 So. 570, 69 A. L. R. 244; *People* v. *Kelley,* 347 Ill. 221, 179 N. E. 898, 80 A. L. R. 890; *Searle* v. *Yensen,* 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257; *Minneapolis St. P. & S. Ste. M. R. R. Co.* v. *R. R. Comm.,* 136 Wis. 146, 147, 116 N. W. 905, 17 L. R. A. (N. S.) 821, 830; *O'Donoghue* v. *United States,* 289 U. S. 516, 77 L. ed. 1356, 53 Sup. Ct. 740; *Springer* v. *Philippine Islands,* 277 U. S. 189, 72 L. ed. 845, 48 Sup. Ct.

480; *J. W. Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394, 72 L. ed. 624, 48 Sup. Ct. 348.

In this State as elsewhere it is a doctrine well established and frequently reiterated by the courts that the functions of the Legislature which are purely and strictly legislative cannot be delegated but must be exercised by it alone. *Sabre et al.* v. *Rutland R. R. Co. et al.,* 86 Vt. 347, 365, 85 Atl. 693, Ann. Cas. 1915C, 1269; *Dougherty* v. *Austin,* 94 Cal. 601, 28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161; *Ex parte Wall,* 48 Cal. 279, 17 A. R. 425; *People* v. *Belcastro,* 356 Ill. 144, 190 N. E. 301, 92 A. L. R. 1223; *Arms* v. *Ayer,* 192 Ill. 601, 61 N. E. 851, 58 L. R. A. 277, 85 A. S. R. 357; *Wyeth* v. *Thomas,* 200 Mass. 474, 86 N. E. 925, 23 L. R. A. (N. S.) 147, 128 A. S. R. 439; *Opinion of the Justices,* 160 Mass. 586, 36 N. E. 488, 495, 231 L. R. A. 113; *Smithberger* v. *Banning,* 129 Neb. 651, 262 N. W. 492, 100 A. L. R. 686; *Harmon* v. *State,* 66 Ohio St. 249, 64 N. E. 117, 58 L. R. A. 618; *American Baseball Club* v. *Philadelphia,* 312 Pa. 311, 167 Atl. 891, 92 A. L. R. 386; Cooley's Constitutional Limitations (8th ed.), 224.

''It is a well settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in *political subdivisions* of powers to govern matters which are local in scope. For a great variety of purposes and governmental functions the legislature may delegate a part of its power over local subjects to municipal corporations, county boards and other public bodies within the legislative classification of departments. * * * The constitutional maxim which prohibits the legislature from delegating its power to any other body or authority is not violated by vesting municipal corporations with certain powers of legislation as to matters purely of local concern of which the parties immediately interested are supposed to be better judges than the legislature.'' 11 Am. Jur., 934 and 935; Cooley's Constitutional Limitations (8th ed.), 389.

Among a multitude of cases that could be cited in support of this proposition are the following: *Stoutenburgh* v. *Hennick,* 129 U. S. 141, 32 L. ed. 637, 9 Sup. Ct. 256; *United States* v. *New Orleans,* 98 U. S. 381, 25 L. ed. 225; *Anderson* v. *Ocala,* 67 Fla. 204, 64 So. 775, 52 L. R. A. (N. S.) 287; *Jacksonville* v.

*Bowden*, 67 Fla. 181, 64 So. 769, L. R. A. 1916D, 913, Ann. Cas. 1915D, 99; *Munn* v. *Finger*, 66 Fla. 572, 64 So. 271, 51 L. R. A. (N. S.) 631; *Grand T. W. R. R. Co.* v. *South Bend*, 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (N. S.) 850, reversed on other grounds, 227 U. S. 544, 57 L. ed. 633, 33 Sup. Ct. 303, 44 L. R. A. (N. S.) 405; *Sanning* v. *Cincinnati*, 81 Ohio St. 142, 90 N. E. 125, 25 L. R. A. (N. S.) 686.

■ Probably the most frequent instances of this kind of delegation of power are in the very many cases where the courts have upheld delegation by legislatures to municipal corporations, either in the charter of the city or village or by other legislation, of the power to assess abutting landowners for a part or all of the expense of local street improvements, waterworks installations and sewers. The rule that has come to be applied is that such assessments must be at least approximately proportionate to the benefits received by the property, such benefits being measured by the foot frontage of the land, its area or its value, or by some combination of these factors. Delegation to municipal corporations of authority to make such assessments has repeatedly been sustained by this Court. *Allen* v. *Drew*, 44 Vt. 174; *Woodhouse et al.* v. *City of Burlington*, 47 Vt. 300; *Barnes* v. *Dyer*, 56 Vt. 469; *Blanchard et al.* v. *City of Barre*, 77 Vt. 420, 60 Atl. 970; *Durkee et al.* v. *City of Barre*, 81 Vt. 530, 71 Atl. 819; *Lazelle et al.* v. *City of Barre*, 81 Vt. 545, 71 Atl. 824.

■■ That the case in hand does not come within the rule governing delegation of such authority to municipal corporations is obvious. Here the authority to assess is delegated to an administrative commission having *quasi* judicial functions with reference to certain matters. The assessments are to be made against and not by the municipal corporations. In reality, of course, the municipality is a mere conduit and the ultimate burden of the assessment is placed upon the individual taxpayers of the town and must be borne by each in proportion to the amount of his taxable property, apparently without regard to whether such property does or does not receive special benefits. Moreover, in the statute here under examination there is neither certainty as to what benefits are included nor such a fixed legal standard, express or implied, as the law requires for determining

■

those benefits. *Allen* v. *Drew, supra; Barnes* v. *Dyer, supra; Corliss* v. *Village of Richford,* 85 Vt. 85, 81 Atl. 234.

It was early found to be expedient in the American governments, national and state, for the legislatures to delegate to subordinate administrative agencies many of the duties connected with the application of the laws. With the greatly increased complexity of modern life and the ever widening field of governmental activity there has been a corresponding increase in the necessity for such delegations of authority. Such delegations which have been upheld by the courts include laws directing public service commissions to find facts and make the required application of the laws with respect to a great variety of subjects, the similar authority given to industrial boards and commissions in connection with the applicaton of workmen's compensation laws, safety regulations and other industrial laws to specific cases, and the authority vested in certain officials to regulate and control the operation of motor vehicles upon the highways; such also are the acts of Congress conferring extensive powers upon such agencies of government as the interstate commerce commission, the federal trade commission and the national labor relations board. Nevertheless, it still remains the rule both in state and in nation that such delegation of authority must not encroach upon the strictly legislative functions of the legislature.

In *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 421, 79 L. ed. 446, 55 Sup. Ct. 241, 248, the United States Supreme Court recently said: "The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. * * * In *Marshall Field Co.* v. *Clark [supra]*, 143 U. S. 649, 692, 693, 36 L. ed. 294, 12 Sup. Ct. 495, the court referred with approval to the distinc-

tion pointed out by the Supreme Court of Ohio in *Cincinnati, Wilmington, etc., R. R. Co.* v. *Clinton Co. Commissioners,* 1 Ohio St. 77, 88, between 'the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law.' Applying that principle, authorizations given by Congress to selected instrumentalities for the purpose of ascertaining the existence of facts to which legislation is directed, have constantly been sustained. Moreover the Congress may not only give such authorizations to determine specific facts, but may establish primary standards, devolving upon others the duty to carry out the declared legislative policy; that is, as Chief Justice Marshall expressed it, 'to fill up the details' under the general provisions made by the legislature. *Wayman* v. *Southard,* 10 Wheat. 1, 43, 6 L. ed. 253.'' See also *Schechter Corp. et al.* v. *United States,* 295 U. S. 495, 79 L. ed. 1570, 55 Sup. Ct. 837, 97 A. L. R. 947, and the many cases cited and discussed in that case and in *Panama Refining Co.* v. *Ryan, supra.*

The United States Supreme Court cases are extremely persuasive because of the similarity of the restrictions upon delegation of legislative authority implied in art. 1, § 1 and art. 1, § 8, ¶ 18, of the Federal Constitution and those implied in the Vermont Constitution. Indeed there is probably no state in the Union whose constitution does not express or imply similar restrictions.

██ ''In all cases where a law provides for the exercise of discretion by administrative officers, in order to be valid and escape the taint of unconstitutional exercise of legislative or judicial authority the discretion must be lawfully exercised in accordance with established principles of justice. It cannot be a mere arbitrary choice, for it has been said that in the American system of government no room is left for the play and action of purely arbitrary power. A distinction is consequently drawn between a delegation of the power to make the law which necessarily includes a discretion as to what it shall be and the conferring of authority or discretion as to its execution. The first cannot be done, but the second, under certain circumstances, is permissible. * * * Any law which authorizes the issuing or withholding of licenses, permits or approvals, or sanctions other ad-

.ministrative functions in such a manner as the designated officials arbitrarily choose, without reference to all of the class to which the law under consideration was intended to apply and without being controlled or guided by any definite rule or specified conditions to which all similarly situated may conform, is unconstitutional and void." 11 Am. Jur. 947; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. 1064; *J. W. Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394, 72 L. ed. 624, 48 Sup. Ct. 348; *Commonwealth* v. *Maletsky,* 203 Mass. 241, 89 N. E. 245, 24 L. R. A. (N. S.) 1168; *Samuels* v. *Couzens,* 222 Mich. 604, 193 N. W. 212; *Tarpey* v. *McClure,* 190 Cal. 593, 213 Pac. 983; *Longshore* v. *Montgomery,* 22 Ala. App. 620, 119 So. 599; *Schireson* v. *Walsh,* 354 Ill. 40, 187 N. E. 921; *State ex rel. Field* v. *Smith,* 329 Mo. 1019, 49 S. W. (2d) 74; *State ex rel. Srigley* v. *Woodworth,* 33 Ohio App. 406, 169 N. E. 713; *Gulf Ref. Co.* v. *Dallas* (Tex. Civ. App.), 10 S. W. (2d) 151; *Thompson* v. *Smith,* 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604; *Hoyt Bros.* v. *Grand Rapids,* 260 Mich. 447, 245 N. W. 509.

In *Village of St. Johnsbury* v. *Aron,* 103 Vt. 22, 151 Atl. 650, 653, the defendant attacked the validity of a village ordinance which required a person before engaging in the business of a junk dealer to procure a license the issuance of which was, to a large degree, discretionary with the trustees of the village. This Court held that the ordinance denied to the defendant the equal protection of the laws, as guaranteed to him by the Fourteenth Amendment of the United States Constitution, saying: "No rules are laid down for the guidance of the trustees; they are not required to consider the personal fitness of the applicant, the propriety and convenience of his location or premises or any other thing in granting or withholding permission to carry on the business. No regulations are prescribed the compliance with which will entitle the applicant to receive a license. * * * Whether or not the license is to be granted lies wholly in the discretion of the trustees, and this discretion they may exercise arbitrarily, and for personal and private reasons." Manifestly this denial of the equal protection of the laws to the defendant resulted because there had been such a delegation of legislative authority to the trustees as is expressly or by necessary implications prohibited by the Constitution of Vermont.

In *Sabre et al.* v. *Rutland R. R. Co. et al.*, 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269, the extent to which the Legislature may delegate authority to the public service commission was under consideration. It is there said, at page 365: "The General Assembly cannot delegate functions which are purely and strictly legislative, but having by general law and by charters made legislative provisions of unquestionable constitutionality applicable to railroad corporations it may confer upon the commission the power upon investigation to apply the general provisions of law to particular circumstances and situations and may leave much of detail to the discretion of the commission."

 Each case of questioned delegation of authority must of course depend upon the facts of that particular case. We think no extended discussion is necessary to show that section 4980 does not meet the constitutional requirements. Neither in this section nor elsewhere in chapter 207 has the Legislature indicated any policy or plan for apportionment of the expense of flood control projects as between the State and the municipalities sought to be assessed. It has not stated directly or by implication the nature or kind of benefits to which it refers. It has given no rule or standard by which those benefits are to be determined and the assessments made. All of these matters, which are something more than mere matters of detail, are left to the judgment and discretion of the public service commission. The commission, in order to act, must say what the law shall be and not merely exercise discretion as to its execution. In the expressive language used by Mr. Justice Cardozo in the Panama Refining Co. case and again in the Schechter case the delegated power of legislation here is not canalized within banks that keep it from overflowing, but is unconfined and vagrant.

██ The provision for appeal to the Supreme Court does not make the law constitutional. If we were called upon to construe section 4980 we should be obliged to decide the same questions that would confront the public service commission, and judicial legislation is no less objectionable than legislation by an administrative agency of government.

Section 4980 contained in chapter 207 of the Public Laws is void because in conflict with the Constitution of Vermont.

The consideration of other grounds upon which chapter 207 and section 4980 are claimed by some of the parties to be un-

constitutional is not necessary for decision of the issue here presented.

*Decree affirmed.*