# Taconic Racing & Breeding Association, Inc.

### v.

# Vermont Department of Public Safety

[296 A.2d 257]

No. 34-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 3, 1972

*Conley & Foote,* Middlebury, for Plaintiff.

*James M. Jeffords,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, for Defendant.

**Keyser, J.** This is an action brought by the appellee, Taconic Racing & Breeding Association, Inc., under the declaratory judgment act, 12 V.S.A. §§ 4711–4712. The primary question raised by the defendant's appeal is the interpretation of 31 V.S.A. § 620 relating to police protection at the race track.

Section 620 provides as follows:

> "Every licensee shall maintain adequate police protection as may be determined by the commissioner of public safety of the state of Vermont, within the grounds or pari-mutuel enclosure and public highways adjacent to the location of such track. Expenses for such designated police protection shall be borne by the licensee and no funds therefor shall be expended from the appropriation of the department of public safety for that protection."

The parties filed an agreed statement of facts which established the following facts in the findings of the court. The appellee owns and operates the Green Mountain Park Race Track located in the town of Pownal, Vermont. It maintains a regular schedule of horse races and has done so since 1963. The Vermont Racing Commission granted a license to the appellee which permitted it to conduct pari-mutuel wagering on thoroughbred and harness racing at the petitioner's race track.

On May 9, 1963, the then commissioner of public safety, pursuant to 31 V.S.A. § 620, issued an order dictating the requirements for adequate police protection within the grounds of pari-mutuel enclosures and public highways adjacent to the location of the track. The order also required the plaintiff to provide sufficient security officers within the park to cope with any situation that might arise. The parties stipulated that the plaintiff has at all times complied with said order as it related to adequate police protection, specifically in the area of traffic control and security officers.

The commissioner's order also provided that "the Vermont State Police will have a detail of from one to two uniformed officers stationed in the State Police Office at the race track. This State Police unit will have radio contact with other units of the State Police. The State Police will have a detail of detectives from the Bureau of Criminal Investigation on duty at the race track during all racing periods." This paragraph of the order is at most a statement of the commissioner's intention to assign state police officers at the track. It does not define their duties or functions or that the cost of the assignment was made subject to reimbursement of the state.

The issue for this Court to decide is whether the commissioner of public safety may assign members of the state police force at the licensee's race track and collect the cost for their salary and expenses under 31 V.S.A. § 620.

Since 1963, as shown by said order, the Vermont Department of Public Safety has assigned one or more officers to the state police office at the race track. These officers are regular state police officers employed by the department of public safety and were paid both salary and expenses by checks issued and signed by the Vermont state treasurer. Upon issuance of said checks, the state treasurer then debited the amount of the checks to the appropriation of the department of public safety.

Acting under 31 V.S.A. § 620, the department of public safety charged the appellee with the cost of the state police officers assigned by the commissioner of public safety to provide protection at the track and required payment thereof by the licensee. The appellee paid, under protest, the amounts thus billed to it, the total of which covering the years 1963 through 1967 amounted to something over $36,000. This action was brought by the appellee to recover the sums it has thus paid and to enjoin the state from attempting to collect any further reimbursements for their costs under the commissioner's order of 1963.

Following the agreed statement of facts, the court by No. 15 of its findings found:

> "That the assignment of the Vermont State Police at said racetrack is not included in the phrase 'adequate police protection' as used in the statute."

The rules pertaining to statutory construction were summarized in *State* v. *Goyet,* 120 Vt. 12, 66, 132 A.2d 623 (1957):

> "The underlying rule of statutory construction is to discover the intent of the Legislature in doing what it has done or attempted. *Town of Randolph* v. *Montgomery,* 109 Vt. 133, 136, 194 A. 481. It is the fundamental rule of statutory construction that the intention of the Legislature must be ascertained and given effect. *Pelton's Exr.* v. *Dumas,* 117 Vt. 13, 16, 84 A.2d 408. The intention of the Legislature constitutes the law. *State Highway Board* v. *Gates,* 110 Vt. 67, 73, 1 A.2d 825; *Riley* v. *Riley's Estate,* 114 Vt. 297, 300, 44 A.2d 153. When words of common use are found in the statute, they are to be taken in their ordinary sense, unless a contrary intention clearly appears. *State* v. *Levine,* 117 Vt. 320, 322, 91 A.2d 678."

The statute, 31 V.S.A. § 620, is, by its nature, a delegation by the legislature to an administrative official of a duty connected with the application of law. *Village of Waterbury* v. *Melendy, et al.,* 109 Vt. 441, 450, 199 A. 236 (1938). The commissioner of public safety is the head of a legislatively created administrative agency. 3 V.S.A. Chapter 9. The commissioner may only perform duties and exercise powers imposed by law. 3 V.S.A. § 203. These powers and duties are to ". . . be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them." *State* v. *Auclair,* 110 Vt. 147, 163–64, 4 A.2d 107 (1939).

As found in Webster's New International Dictionary, 3rd Edition, "maintain" means "to hold or keep in any particular state of efficiency or validity, to sustain against opposition or danger, to uphold and provide for."

In this case, the directions to the commissioner of public safety are most clear. The statute states that the licensee is to maintain adequate police protection. It designates the commissioner as the person who is to determine what is to be adequate police protection that the licensee is required to maintain. 31 V.S.A. § 620. The statute mentions nothing about the commissioner himself maintaining a two-man, or any, state police detachment at the race track. Under the statute, the commissioner was merely to determine what con-

stituted adequate police protection, and it then became the duty of the licensee to implement it, which it did. The legislature imposed no duty upon the commissioner to maintain any police protection; that duty was mandated to the licensee. 31 V.S.A. § 620.

■ ■ Not only did the commissioner of public safety overstep his powers granted under 31 V.S.A. § 620 by assigning a state police unit to the race track at the expense of the licensee, but also by payment to those officers for their services and expenses out of funds in the state treasury. The legislature stated most unequivocally that ". . . *no* funds . . . shall be expended from . . . the department of public safety . . . ." (Emphasis added.) The intent of the legislature is plain and must be given its effect. *Billings* v. *Billings,* 114 Vt. 70, 72, 39 A.2d 748 (1944). There can be no doubt but that the legislature intended that no state funds be expended in the providing of adequate police protection at the race track.

■ ■ Legislative intent can also be ascertained by examining other parts of one system of legislation dealing with the same subject matter. *Grand Lodge of Vermont* v. *City of Burlington,* 104 Vt. 515, 519, 162 A. 368 (1932). Other sections of Title 31 of the Vermont Statutes Annotated entitled "Recreation and Sports" which provides for police protection at public recreational events provide that the police protection is to be paid by the one operating such event. See 31 V.S.A. § 502 (pertaining to dance halls) and 31 V.S.A. § 311 (pertaining to motor vehicle races). Reading all of these sections *in pari materia,* displays the legislative intent that the expense for police protection at such events shall not be borne by the state. These statutes merely require that police protection shall be provided, the reasons for which are obvious. And they relate to a matter which is subject to the police power of the state. Here, the appellee does not question that it must pay for the "adequate police protection" which the order required it must provide. Nor does it contest the fact that the requirement was within constitutional dimensions.

Finding No. 15 of the court, *supra,* is without error and, together with the other findings, supports the judgment.

*Judgment affirmed.*

**Shangraw, C.J., dissenting.** In determining whether the commissioner of public safety properly administered 31 V.S.A. § 620 relating to police protection at the race track, it is necessary to consider section 601 of Chapter 13, Title 31 entitled "Construction and purpose" which reads as follows:

> "This chapter is based upon the taxing power and the police power of the state and provides for the establishment, licensing, regulation and control of the pari-mutuel system of wagering on horse races, and is for the protection of the public welfare and good order of the people of the state, the support and encouragement of agricultural fairs and the improvement of the breed of horses in Vermont."

Among other things, the legislature was wisely concerned with the "protection of the public welfare and good order of the people of the state" as set forth in the foregoing section. I cannot conceive that the legislature, in its wisdom, intended that the police protection to be provided, incident to the operation and maintenance of the race track, was to be left entirely, and in the discretion of the licensee, to its personnel hired for this purpose. Certainly it is advantageous to the citizens of Vermont to have members of the department of public safety at the track and not to leave the police protection entirely to the employees of a private corporation.

By the enactment of section 620, *supra*, the legislature no doubt had in mind the security of the public against incidents arising as a result of the pari-mutuel operation which the licensee was not prepared to cope with. Under the provisions of section 620, *supra*, it not only intended to protect the owners of the race track but also all other persons in attendance and to generally safeguard the interests of all Vermonters by guarding against a violation of the laws of Vermont.

The order of the Commissioner of Public Safety dated May 3, 1963, required that the licensee be responsible for the policing of vehicle traffic entering and departing from Route 7, and also directed the presence of officers at the junction of Routes 346 and 7. It also provided for traffic protection at the southern and northern Boston and Maine Railroad train crossings as well as at any school crossing adjacent to the race track on days of racing.

The order continued by stating:

> "The Taconic Racing and Breeding Association, Inc. shall provide sufficient security officers within the park to cope with any situation that may arise.
>
> The Vermont State Police will have a detail of from one to two uniformed officers stationed in the State Police office at the race track. This State Police unit will have radio contact with other units of the State Police. The State Police will have a detail of detectives from the Bureau of Criminal Investigation on duty at the race track during all racing periods."

It is my view that the statutory provisions of section 620, *supra,* are a part of the bargain between the State of Vermont and the licensee under which the latter was permitted to operate. It can hardly be assumed that the legislature was only concerned with traffic supervision by its inclusion in section 620, *supra,* of the provisions that the ". . . licensee shall maintain adequate police protection as may be determined by the commissioner of public safety of the State of Vermont, . . . ." His determination plainly encompassed the state police personnel assigned.

The Commissioner of Public Safety was afforded wide discretion in the supervision and requirement of facilities which appeared to him conducive to the protection of the public welfare. This discretion does not appear to have been abused. It must be acknowledged that trained investigators and enforcement officers were most desirable and no doubt necessary to afford protection to property and persons in attendance at the race track.

It is my judgment that the legislature by the enactment of section 620, *supra,* may well have had in mind the facilities at the disposal of the State Police for prompt communication with outside agencies in cases of emergency and that "police protection" as contained in the foregoing section was not limited to traffic control. I cannot subscribe to the conclusion arrived at by the Chancellor "That the assignment of the Vermont State Police at said racetrack is not included in the phrase 'adequate police protection', as used in the statute." 31 V.S.A. § 620.

No question apparently has been raised as to the reasonableness of the charges made against the licensee, paid by it under protest, and for which it now seeks to recover in this action.

I would reverse and enter judgment in favor of the defendant.