## State of Vermont v. Gene Welch

[376 A.2d 351]

No. 73-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed June 7, 1977

*Gregory W. McNaughton,* Washington County State's Attorney, Montpelier, for Plaintiff.

*John Morale,* Wells River, for Defendant.

**Hill, J.** This case comes before us as a result of a conviction entered against the appellant on the charge of driving while intoxicated, death resulting, a violation of 23 V.S.A. §§ 1201 and 1210(b).

The facts pertinent to the issues we deem necessary to consider in order to resolve the present appeal are briefly stated as follows. On the evening of August 12, 1973, in Barre, Vermont, the appellant, Gene Welch, was involved in an automobile accident in which the vehicle he was driving struck and killed a pedestrian. The police officers summoned to the scene observed that the appellant smelled of alcohol, seemed unsteady on his feet, and appeared to be under the influence of intoxicating liquor. Approximately one and one-half hours following the collision, the police officers, as a result of their decision to ask the appellant to submit to a breathalyzer test, read the appellant the form explanation of the Implied Consent Law and also provided him with the standard Miranda warnings. The appellant, upon hearing that he had a right to counsel, immediately informed the officers that he desired to speak with his personal attorney prior to taking the test. Initially the officers made no objection and the appellant directed his mother, present at the scene, to call his attorney. However, after his mother left to make the call, the police officers told the appellant that, unless he took the test immediately, his reluctance would be deemed a refusal and his license would be suspended for one year. By the time his mother returned with the attorney's advice not to take the test (approximately five minutes after the initial request), the appellant had been convinced by the officers to submit to the test. The test was administered, indicating the appellant's blood alcohol content to be .179%.

Subsequently, the appellant was charged with a violation of 23 V.S.A. § 1201. Trial by jury was had in the District Court of Vermont, Unit No. 5, Washington Circuit. The jury returned a verdict of guilty. Judgment was ordered entered in accordance with the verdict.

The sole issue that is raised for our consideration in this case concerns whether the appellant's right to the aid and assistance

of counsel was violated by the actions of the police on the evening in question. The appellant has chosen to narrowly state the question as follows:

> Is the operator of a motor vehicle who is asked to give a sample of his breath under 23 V.S.A. § 1202 entitled to speak with his attorney concerning his legal rights prior to giving the sample, where the operator requests to consult with his attorney, has a particular attorney in mind, where the delay will be minimal and where the breath test results will be unaffected by the short lapse of time?

For reasons to be developed in the remainder of this opinion, we would answer this question in the affirmative.

Subchapter 13 of Title 23 of the Vermont Statutes Annotated sets out a simple procedure to be followed in situations in which a police officer has reasonable grounds to believe that a person was operating a vehicle while intoxicated. 23 V.S.A. § 1202. The operator is requested to take a chemical test to determine his blood alcohol content. The results of this test, or the refusal to submit thereto, may give rise to two possible proceedings - one civil in nature involving the suspension of an operator's license; the other criminal, giving rise to a charge of operating a vehicle while under the influence of intoxicating liquor. 23 V.S.A. §§ 1201, 1205, 1210.

When the request to take a chemical test is made, a refusal leaves both procedures, civil and criminal, still open under 23 V.S.A. § 1205:

> (a) If the person refuses to submit to a chemical test, it shall not be given but such refusal may be introduced as evidence in a criminal proceeding . . . . Upon a finding by the court that the officer had reasonable grounds to believe that the respondent was so operating . . . the person's operator's license . . . shall be suspended for a period of one year. . . .

The "reasonableness" summary hearing created by this section is in the nature of an administrative proceeding and is the determination of a civil matter, concerning whether a respondent should be subject to having his operator's license suspended. *State* v. *Mastaler*, 130 Vt. 44, 285 A.2d 776 (1971); *State* v. *District Court*, 129 Vt. 212, 274 A.2d 685 (1971). The

necessity for holding such a "reasonableness" hearing is, of course, obviated if the respondent consents to take the test.

In the context of any criminal proceedings that may be initiated against the operator, should he refuse to take the test it cannot be administered, but the fact of his refusal may be introduced as evidence against him. 23 V.S.A. § 1205. However, if the operator consents to submit to the test, the results are made admissible in any proceeding, and certain presumptions from them are specified. 23 V.S.A. § 1204.

Obviously, the various alternatives created by the Vermont Implied Consent Law and their immediate consequences are not so complex that they cannot be understood by laymen. The more serious inquiry, and the one we are confronted with by the facts of this appeal, is whether, given the potentially weighty long-term legal consequences, the aid of an attorney should be allowed a respondent in order to properly evaluate these considerations. See Comment, *The Right to Counsel Under Oregon's Implied Consent Law*, 10 Willamette L. J. 236 (1974).

In the case of *State* v. *Dellveneri*, 128 Vt. 85, 258 A.2d 834 (1969), this Court dealt with various aspects of the right to counsel as they might arise in the summary "reasonableness" hearing now set out in 23 V.S.A. § 1205. There we determined that, since the summary hearing is in the nature of an administrative proceeding involving a wholly civil matter, there was no requirement that the respondent either be informed of a right to counsel prior to taking the test, or that he be furnished, if indigent, with appointed counsel. *Id.* at 88.

The instant case is readily distinguishable from the situation posed in *State* v. *Dellveneri.* Here the proceedings brought against the respondent are criminal in nature and provide for a penalty of up to five years imprisonment. 23 V.S.A. § 1210(b). Further, we note that the appellant was advised that he had the right to an attorney and requested access to his own attorney who was immediately available by telephone. Certainly, there is an immense difference between a failure to advise a defendant of his right to counsel - the situation posed in *Dellveneri* - and a refusal to allow him ready access to counsel after he has requested same. See *People* v. *Craft*, 28 N.Y.2d 274, 270 N.E.2d 297, 300, 321 N.Y.S.2d 566 (1971).

The United States Supreme Court, beginning in 1932, has held that the scope to be relegated to the pretrial right to counsel is to be based on the protection of the defendant's Sixth

Amendment right to counsel at trial. If the right to counsel is not provided at a "critical" pretrial stage, the defendant's right to counsel may be rendered meaningless. *Powell* v. *Alabama*, 287 U.S. 45 (1932); *Hamilton* v. *Alabama*, 368 U.S. 52 (1961); *Massiah* v. *United States*, 377 U.S. 201 (1964); *Escobedo* v. *Illinois*, 378 U.S. 478 (1964). The leading case in this area is *United States* v. *Wade*, 388 U.S. 218 (1967). There the Court stated the "critical stage" test as follows:

> [T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. [*Id.* at 226.]

More recently, the Supreme Court, in *Kirby* v. *Illinois*, 406 U.S. 682 (1972), held that no right to counsel attaches until the defendant has been formally charged. However, the plurality opinion in that case dealt solely with pretrial identification procedures, and may be limited to those situations. Even if given a broader interpretation, *Kirby* still adheres to the established position that it is necessary in all cases to scrutinize any pretrial confrontation to ensure the fairness of the procedures in light of an accused's rights to due process of law. *Id.* at 691. See also *United States* v. *Ash*, 413 U.S. 300, 320 (1973); *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967); Comment, *The Pretrial Right to Counsel*, 26 Stan. L. Rev. 399, 418 (1974); Note, *The State Responses to Kirby* v. *United States*, 1975 Wash. U. L. Q. 423.

▮ The State seeks to remove the present case from the "critical stage" analysis by virtue of its construction of 23 V.S.A. § 1203(d) which states, "A sample of breath or blood shall be obtained if feasible from any surviving operator whose vehicle is involved in a fatal accident." The State argues that when a fatality is involved an operator is not given the choice whether to submit to the test, but in all cases must take the test if requested to do so. Under the rule of *United States* v. *Wade*, *supra*, 388 U.S. at 227, 228, the State contends that when no choice is to be had the advice of counsel can be of no value whatever.

This construction proffered by the State is apparently based on the use of the mandatory word "shall" in § 1203(d). We note, however, that the word "shall" is employed in the context of § 1202 wherein it is stated:

> A sample of his breath or blood shall be taken whenever a state police officer, chief of police, or a police officer employed full-time by a town, city or incorporated village or sheriff has reasonable grounds to believe that the person was operating, attempting to operate or was in actual physical control of any vehicle while under the influence of intoxicating liquor. . . .

In the interpretation of statutes, the rule is to give effect to the intent of the Legislature. *Donoghue* v. *Smith,* 119 Vt. 259, 126 A.2d 93 (1956). In this regard, it is our duty to examine other parts of one system of legislation dealing with the same subject matter. *Taconic Racing & Breeding Association* v. *Department of Public Safety,* 130 Vt. 388, 392, 296 A.2d 257 (1972). When the same word is used in various sections of the act, or in statutes in pari materia, it will bear the same meaning throughout, unless it is obvious that another meaning was intended. *Clifford* v. *West Hartford Creamery Co.,* 103 Vt. 229, 253, 153 A. 205 (1931); *Billings* v. *Billings,* 114 Vt. 512, 517, 49 A.2d 179 (1946).

Employing the foregoing rules of statutory construction, we can discern no reason why the "shall" used in § 1203(d) should be assigned an import different from that given the "shall" of § 1202. Both sections are properly subject to § 1205 which allows a person asked to submit to a chemical test to refuse if he so desires.

It seems apparent that the mandatory aspect of the word "shall" as used throughout the Implied Consent Law concerns the duties of the investigating police officers. In those situations contemplated by §§ 1202 and 1203, the officers are required to make the request that the suspect operator submit to testing. In either case the driver retains his statutory option to refuse and suffer the consequences.

█ In view of the statutory provisions of 23 V.S.A. § 1205(a) protecting an operator's right to refuse to take any test, it seems clear that when a serious criminal case is involved, the request to submit to a chemical test can rise to the level of a "critical stage" in the proceedings. The choice whether to take the test will invariably affect the evidence that will be made available at trial, and the presumptions to be drawn from that evidence. The Implied Consent Law, therefore, by creating the statutory choice, has put the suspect operator in a situation where counsel

could be of aid. It seems to us, then, that concern for the individual's rights requires that we recognize a limited right to counsel so that drivers may adequately evaluate their decision pursuant to the Implied Consent Law. See *Pickard* v. *Director of Motor Vehicles*, 184 Neb. 573, 169 N.W.2d 460, 461 (1969). Having determined this much, however, we note that the privilege of consulting with counsel concerning the exercise of legal rights should not be allowed to interfere with the necessarily expedient procedures requiring operators to make their choice whether to submit to the test. See *People* v. *Gursey*, 22 N.Y.2d 224, 239 N.E.2d 351, 353, 292 N.Y.S.2d 416 (1968). Therefore, this Court holds that police officials may not, without reason, deny access between an accused and his lawyer, when such access is requested and is readily available and will not interfere with investigation of the matter at hand.

*The judgment of the District Court of Vermont, Unit No. 5, Washington Circuit, is reversed. The cause is hereby remanded for a new trial.*